ROGERS, Justice.
 

 The plaintiff, Charles A. Laterriere, who is a taxpayer of the city of New Orleans, sued to enjoin the board of levee commissioners of the Orleans levee district from selling or exchanging refunding bonds in the sum of $200,000, the proceeds to be used in the purchase of lands and improvements for levee purposes and for replacing the streets used or destroyed in the performance of the work. The court below denied plaintiff’s application for an injunction and dismissed his suit. Plaintiff has appealed from the judgment.
 

 
 *1063
 
 The board of commissioners of the Orleans levee district and the city of New Orleans entered into a. contract dated January 9, 1935, and a supplemental contract, amending the original contract, dated April 2, 1935, wherein the contracting parties mutually agreed to contribute certain proportions of the money necessary to acquire lands in the vicinity of the Dumaine street levee, which the United States government, acting through the Mississippi river commission, had ordered the defendant levee board to move back. The lands when acquired are to be used, first, for the purpose of setting back the levee and replacing the streets used or destroyed, which phase of the project is to be handled by the defendant levee board; and, secondly, the remainder of the lands acquired is to be used by the city of New Orleans in reconstructing the French Market. The underlying purpose of the contract between the levee board and the municipality is to carry out two great and necessary public improvements, without duplication of effort, and with a consequent saving in the cost of the work to both contracting parties. The contract provides that the levee board is to contribute $200,000 and the city of New Orleans is to contribute $150,000, the fund thereby created to be expended by the city of New Orleans in purchasing the necessary property.
 

 Acting under the terms of its contract with the levee board, the city of New Orleans completed its arrangements for securing the money it had agreed to furnish. It also took the necessary steps to purchase the property required; and, in general, the municipality has carried out all the obligations of its contract.
 

 The French Market Corporation, a non-trading corporation, organized under the laws of this state, entered into a contract with the Public Works Administration of the United States government, under which it has arranged to obtain a certain amount of money for the purpose of constructing the new French Market and a farmer’s market. The French Market Corporation has offered to purchase bonds of the value of $200,000 from the defendant levee board. The levee board has no other funds or resources out of which its obligation to the city of New Orleans can be met, since the tax of one-fourth of one mill on the dollar authorized by section 6 of article 16 of the State Constitution has not been levied.
 

 The position taken by the defendant levee board is three-fold, viz.: That it has the right to issue refunding bonds under the provisions of Act No. 29 of the Second Extraordinary Session of 1935 for the purpose of discharging its obligation to the city of New Orleans, which obligation arose prior to May 10, 1935, when the legislative act became effective; that it is under no necessity to sell the bonds in order to pay the city of New Orleans, since under the terms of Act No. 28 of the Third Extraordinary Session of 1934 it is authorized to
 
 *1065
 
 exchange the bonds in payment of the indebtedness; that it is authorized, if it sees fit to do so, to issue funding bonds under section 6 of article 16 of the State Constitution and to levy and fund an annual tax of one-fourth of one mill on the dollar to pay the principal and interest of the bonds. All the contentions of the defendant levee board were upheld by the judge of the district court.
 

 As disclosed by its title, Act No. 29 of the Second Extraordinary Session of 1935 was enacted to provide for the financing of the Orleans levee district; to authorize the issuance of refunding bonds by the district; to impose limitations upon its incurring of debt; and to provide for the payment of all indebtedness it had incurred or might thereafter incur.
 

 The first question to be determined is whether the contract between the defendant levee board and the city of New Orleans constituted an indebtedness existing on the date Act No. 29 of the Second Extraordinary Session of 1935 took effect.
 

 Ordinarily, the word “debt” imports a sum of money arising on a contract, express or implied; but in its more general sense it means that which one person is bound to pay or perform for another.
 

 Thus a debt is “that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; an obligation or liability.” Vide “Debt,” Webster’s New International Dictionary, Second Series (1935).
 

 “The word ‘debt,’ as defined-by Burrill, is of large import, including not only debts of record or judgments and debts by specialty, but also obligations' arising by simple contract to a very wide extent, and in its popular sense includes all that is due to a man under any form of obligation or promise.” Vide, Debt, Words and Phrases, First Series, vol. 2, p. 1865.
 

 Article 3556, pars. 20 and 21, of the Civil Code, define “obligee or creditor” and “obligor or debtor” as follows, viz.:
 

 “20. Obligee or creditor is the person in favor of whom some obligation is contracted, whether such obligation be to pay a sum of money, or to do or not to do something.
 

 “21. Obligor or debtor is the person who has engaged to perform some obligation.”
 

 Under the provisions of the codal article, the words “obligation” and “debt” are synonymous or convertible terms. Hibernia Bank & Trust Co. v. McCall Bros. P. & Mfg. Co., 140 La. 763, 73 So. 857.
 

 Thus it will be seen that included in the term “debt” is any obligation that one person is under to another to pay money or anything of value, which arises from the moment that the obligation is undertaken and which continues until it is discharged by performance.
 

 The source of the obligation imposed on the defendant levee board is the
 
 *1067
 
 contract which the board entered into with the city of New Orleans. That obligation or debt arose from the moment the contract was completed. The -contract created an obligation or debt on the part of the defendant levee board to pay $200,000 to the city of New Orleans. The contract was legal, was entered into in good faith for a public purpose, and imposed mutual liabilities upon the contracting parties.
 

 The city of New Orleans carried out its part of the contract and took the necessary steps to purchase the property required. The defendant levee board always recognized its obligation to contribute its proportion of the purchase price, and was arranging to issue the necessary bonds when Act No. 29 of the Second Extraordinary Session of 1935 became effective, thereby preventing the board from issuing bonds except for an existing indebtedness and several other purposes set forth in the statute.
 

 Under the circumstances, we think the defendant levee board has the clear right to issue refunding bonds for the purpose of discharging its obligation to the city of New. Orleans. That obligation arose prior to, and was in existence at, the time Act No. 29 of the Second Extraordinary Session of 1935 went into effect. And the term “existing indebtedness” as employed in the statute should receive a broad interpretation so as to cover all the liabilities created under the executory contracts entered into between the defendant levee board and the city of New Orleans for the purpose of carrying out two great public improvements.
 

 The next question to be determined is whether the defendant levee board is compelled to sell the refunding bonds or whether it is authorized to exchange the bonds in order to discharge its obligation to the city of New Orleans.
 

 Act No. 29 of the Second Extraordinary Session of 1935 authorizes the defendant levee board to issue refunding bonds for the purposes therein stated. The statute does not set forth whether the bonds may be sold, provide for the method of sale, nor state whether they may he exchanged for the indebtedness. But section 4 of Act No. 28 of the Third Extraordinary Session of 1934 grants the right to the defendant levee board to exchange its refunding bonds for an outstanding indebtedness. There appears to be no conflict between section 4 of Act No. 28 of the Third Extraordinary Session of 1934 and the provisions of Act No. 29 of the Second Extraordinary Session of 1935. Hence section 4 of Act No. 28 of the Third Extraordinary Session of 1934 is in full effect. And our conclusion is that under its provisions the defendant levee board is not compelled to sell its refunding bonds but may legally exchange them for any outstanding indebtedness.
 

 The third and last question to be determined is whether the defendant levee board, in order to procure the necessary
 
 *1069
 
 funds to discharge its obligation to the city of New Orleans, is authorized by section 6 of article 16 of the State Constitution to issue funding bonds and to levy and fund an annual tax of one-fourth of one mill on the dollar to pay the principal and interest of the bonds.
 

 Prior to the adoption of the Constitution of 1898, the defendant levee board, operating under article 665 of the Civil Code, was not required to pay for any property appropriated for levee purposes. In order to correct this palpable injustice, the framers of the Constitution of 1898 inserted article 312 in that instrument, granting to persons whose property might be appropriated by the defendant levee board a right of action against the board for the value of the property appropriated, and providing for the payment of whatever judgments might be rendered against the board out of the taxes collected by it in the same manner as other disbursements are made.
 

 Section 6 of article 16 of the Constitution of 1921 was adopted as a substitute for article 312 of the Constitution of 1898. Section 6 of article 16 of the Constitution of 1921 read as follows, viz.:
 

 “Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for at a price not to exceed the assessed value for the preceding year; provided, this shall not apply to batture, nor to property control of which is vested in the State or any subdivision thereof for the purpose of commerce.
 

 “If the district has no other funds or resources out of which such payment can be made, it may levy, on all taxable property situated therein, a tax sufficient to pay for said property so taken, not to exceed one-fourth of one mill on the dollar, to be used solely in the district where collected. This shall not prevent the appropriation of said property before payment.”
 

 In the year 1927 this court in the case of the City of New Orleans v. Board of Levee Commissioners of Orleans Levee District, 164 La. 1020, 115 So. 131, held that under section 6 of article 16 of the Constitution of 1921 the defendant levee board was not obligated to replace a street or highway used or destroyed in the construction of a levee.
 

 In order to meet this situation, section 6 of article 16 of the Constitution of 1921 was amended by Act No. 165 of 1928, which was adopted as a constitutional amendment on November 6, 1928, so as to provide for the acquisition of property and the restoration of any street or highway used or destroyed for levees or levee drainage purposes in a certain-class of municipalities of 'which the city of New Orleans is one; such restored street or highway to be of a similar type or character as that of the street or highway used or destroyed. The constitutional amendment also provides that: “If the district has no other funds or resources out of which such
 
 *1071
 
 payment can be made, it may levy, on all taxable property situated therein, a tax sufficient to pay * * * for such streets and highways so relocated and restored * * * not to exceed one-fourth of one mill on the dollar, to be used solely in the district where collected.”
 

 Section 2 of article 16 of the Constitution of 1921 authorizes the governing authorities of the levee districts throughout the state to levy annually a tax not to exceed five mills on the dollar on all taxable property situated within the alluvial portions of the districts subject to overflow for the purpose of constructing and maintaining levees, levee drainage, and for all other purposes incidental thereto. The constitutional provision also provides for an increase in the tax should the necessity therefor arise and the increase be authorized by a vote of the majority in number and value of the qualified property taxpayers voting in the election.
 

 Section 2 of article 16 of the Constitution of 1921 authorizes the defendant levee board to levy an annual tax not to exceed five mills on the dollar for the purpose of constructing and maintaining levees, levee drainage, and for general levee purposes.
 

 Section 6 of article 16 of the Constitution of 1921, as amended (see Act No. 165 of 1928), grants an additional right to the defendant levee board to levee a tax of one-fourth of one mill on the dollar in order to compensate the owners of property taken for levees or levee drainage purposes or for replacing any street or highway actually used or destroyed for levees or levee drainage purposes.
 

 It is clear that the objects embraced in the constitutional provisions are wholly different. Section 6 grants the defendant levee board the necessary authority for raising funds for a purpose not contemplated by section 2. The funds raised under the authority of section 2 are to be used for the purpose of constructing and maintaining levees, levee drainage, and other incidental purposes, while the funds raised under the authority of section 6 are to be used for the purpose of compensating the owners of property actually used or destroyed for levees or levee drainage purposes and for the acquisition of property to be used for restoring streets or highways actually used or destroyed for levees or for levee drainage purposes.
 

 It was shown on the trial of the case that the defendant levee board has no other funds or resources out of which to discharge its obligation to the city of New Orleans, and that it should be authorized to levy an additional tax of one-fourth of one mill on the dollar if it should find itself in a position where such a levy is required.
 

 For the reasons assigned, the judgment appealed from is affirmed.