136 So.2d 774 (1962)
Earl COLLIER
v.
ADMINISTRATOR, SUCCESSION OF Jacques E. BLEVINS et al.
No. 131.
Court of Appeal of Louisiana, Fourth Circuit.
January 2, 1962.
Rehearing Denied February 5, 1962.
Certiorari Denied March 28, 1962.
*775 Roos & Roos, Sidney G. Roos, New Orleans, for plaintiff and appellant.
Henican, James & Cleveland, C. Ellis Henican, New Orleans, for defendants and appellees.
Before McBRIDE, SAMUEL and HALL, JJ.
McBRIDE, Judge.
The late Jacques E. Blevins entered into an agreement with plaintiff to the effect that the latter was to receive from Blevins as his compensation for any "properties or prospects you put me in touch with in the Paradis Field a 1/96th interest in any oil, gas and mineral leases I may take or secure as a result of your efforts and assistance. This interest is to be in the nature of an overriding royalty interest * * *. When and as each deal is closed, I am to execute and deliver to you in due course an assignment covering your interest * * *." The agreement was confirmed by Blevins' letter to plaintiff bearing date May 27, 1939, from which the above-quoted language was extracted. Blevins further stated in said letter: "The deals in connection with which I am obligated to you at the present time are as follows:
"1. * * *
"2. All property of Mr. and Mrs. H. C. Campbell, consisting of 30 acres tract and some other lots or parcels of land.
"3. * * *
"4. * * *
On June 15, 1952, the agreement was modified to the extent as stated in a letter written by Blevins to plaintiff (which was confirmed and approved by plaintiff), reading:
"Mr. E. M. Collier "Paradis, Louisiana
 "Re: Property of Mr. and Mrs.
 "H. C. Campbell in Paradis,
 "St. Charles Parish, Louisiana
"Dear Mr. Collier:
"This agreement is to modify our prior agreement with respect to the property of Mr. and Mrs. H. C. Campbell located in the Town of Paradis, St. Charles Parish, Louisiana.
"It is agreed that in consideration of the compromise I have been able to work out of the existing litigation affecting Farm Lots 11 to 16 in Paradis, *776 our prior agreement with respect to the Campbell property is hereby amended and it is agreed that in lieu of any other consideration to which you may have been entitled, you are to receive the sum of $1,750.00 out of the proceeds of the 1/16 of 8/8 of production from the overriding royalty funds now impounded by The Texas Company in the registry of the Court. The said sum of $1,750.00 is to be paid to you simultaneously with the release of the said funds, whenever the same are released by the Court.
"Please confirm the foregoing agreement by signing and returning to me a copy hereof.
 "Very truly yours,
 "Jacques E. Blevins
"I hereby confirm and approve the agreement set out in the foregoing letter.
"Earl M. Collier
"Witness: "Margaret E. Lauer"
On August 31, 1953, Blevins died.
On August 15, 1955, a corporation known as Marshland Oil Corporation sent plaintiff its check payable to his order for $1,750, accompanied by a letter reading as follows:
"Mr. Earl M. Collier "Paradis "Louisiana
"Dear Mr. Collier:
"The proceeds payable to the late Mr. Blevins, on deposit in the Civil District Court for the Parish of Orleans in the concursus proceeding provoked by The Texas Company against A. J. McDonald, et al, have been paid to this corporation as Trustee for Mr. Blevins. By virtue of its authority from Mr. Blevins the funds are to be disbursed to those to whom they were assigned.
"Accordingly, the amount of $1,750.00 due to you by Mr. Blevins and payable out of the said deposited funds is now available and check for said amount is enclosed herewith.
"This payment is made in accordance with your agreement with Mr. Blevins dated June 15, 1952, recorded by you in the Conveyance Office of St. Charles Parish, Louisiana, on June 17, 1952, and appearing in Conveyance Book #1, at Page 115, as Entry No. 9464.
 "Very truly yours,
 "Marshland Oil Corporation"
Plaintiff has never cashed the $1,750 check. On the same day he received it his attorney tendered the return of the check to Marshland Oil Corporation which refused the tender.
This suit was filed by plaintiff on December 15, 1955. Impleaded as defendants are: (1) Blevins' executrix, (2) Margaret E. Lauer, (3) Marshland Oil Corporation, and (4) Paradis Oil Corporation. Plaintiff alleges in his original and supplemental and amended petitions that on June 12, 1939, Blevins acquired a ½ mineral interest in the Campbell property; that plaintiff "mislaid" the letter of May 27, 1939, and had forgotten about it; that in an effort to cheat and defraud plaintiff Blevins called upon him to sign the modifying agreement of June 15, 1952, falsely representing that "he had to settle for 1/3 the litigation mentioned therein; that at the time Blevins had not "worked out" a compromise; that Blevins gave plaintiff no consideration whatever as the $1,750 he agreed to pay he had already collected on the proceeds of oil from the Campbell land; that said agreement was postdated, is null and void; that Blevins falsely represented he had received "no payment coming to plaintiff under the agreement of 1939"; that plaintiff relied on said false representation; that there has been produced from the lands covered by the agreement of 1939 a total of 750,103 barrels of oil of which plaintiff is entitled to his 1/96 thereof which has a value of $19,533.70; that plaintiff is entitled to a 1/96 of all oil produced in the future; that Margaret *777 E. Lauer, the confidential secretary of Blevins, and the "dummy" corporations known as Marshland Oil Corporation and Paradis Oil Corporation, all of the stock in which was owned by Blevins, joined in the efforts of Blevins to defraud plaintiff in that Blevins' royalty deeds and leases were fraudulently placed in their names without consideration; that the acts done in defrauding plaintiff of his rights should be annulled and set aside and that the property standing in the name of Margaret E. Lauer and said corporations should be decreed as belonging to the Succession of Blevins. Judgment is prayed for against all defendants decreeing their indebtedness to plaintiff for $19,533.70; that the Campbell property belongs to Blevins' estate and that plaintiff is the owner of a 1/96 royalty interest therein; that defendants be condemned to account to plaintiff for all oil produced, and for rentals, bonuses, receipts, etc., and that he have judgment for his share thereof; that plaintiff's future rights under the agreement of 1939 be reserved.
Defendants interposed several exceptions to the petitions and none, save one, need be considered or discussed. In their answers defendants generally deny all averments of fraud leveled against them.
After a trial on the merits of the case, judgment was rendered in favor of all defendants dismissing plaintiff's suit, from which he has appealed.
Blevins' executrix sought to have the suit dismissed on the exception that plaintiff's rights, if any he may have had, are unenforceable because of the provisions of LSA-R.S. 13:3721, which read:
"Parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought more than twelve months after the death of the deceased."
Blevins departed this life on August 31, 1953, and on September 10, 1953, his succession was duly opened. The instant suit was not filed until December 15, 1955, more than two years after the death. The lower court overruled such exception holding that LSA-R.S. 13:3721 provided no prescription and was but a restrictive statute limiting the type of evidence admissible to prove a debt or claim against a party deceased when suit thereon is brought more than one year after death. This ruling was correct. The purpose of the statute is to protect the property of decedents from stale and unfounded claims that might be refuted by his testimony were he able to defend himself. Succession of DeLoach, 204 La. 805, 16 So.2d 361.
Plaintiff first called Margaret E. Lauer, testamentary executrix of Blevins, under cross-examination, who, over the strenuous objections of defendants' counsel that parol evidence was inadmissible, gave certain testimony which need not be detailed for it has no probative force anent the issues in the case. However, during her cross-examination, the trial judge made his ruling that parol evidence was inadmissible since the suit had been filed over two years after his death. No error appears in such ruling.
The provisions of LSA-R.S. 13:3722 are applicable in this suit. Plaintiff is seeking to set aside a compromise he admittedly entered into. The rescission of the compromise would be a necessary step before he could proceed further to prove the debt or liability of the decedent. In the case of Laterriere v. Board of Levee Com'rs of Orleans Levee Dist., 182 La. 1060, 162 So. 773, the Supreme Court recognized that "debt" and "obligation" were synonymous, and, therefore, "debt" in its general sense means "obligation," which covers money, goods, or services. In Succession of DeLoach, supra, the provisions of the section were held to be applicable in an action to recover realty from the succession *778 of a deceased brought more than eighteen years after decedent's death as such liability could not be established by parol.
Plaintiff then offered certain documents in evidence, including the final account in the Succession of Blevins; the original agreement between Blevins and plaintiff of May 27, 1939; a photostatic copy of a compromise between Paradis Oil Corporation and Sunset Realty & Planting Co., Inc., and the judgment thereon; copies of certain pleadings in the matter of Liquidation of the Hibernia Bank & Trust Company, No. 202,253 of the docket of the Civil District Court for the Parish of Orleans; the letter of June 15, 1952, written by Blevins to plaintiff and accepted by the latter modifying their previous agreement; the provisional account, inventory, and decedent's last will in the Succession of Blevins; a letter addressed to Blevins by plaintiff's counsel on October 30, 1952; and certain statements rendered by The Texas Company showing the production applicable to Farm Lots 11 to 16 in Paradis (the Campbell property) from September 1943 through April 1952, out of drilling unit #277 (of which the Campbell lots form a part) created pursuant to Order No. 37-4 issued by the Department of Conservation of the State of Louisiana, under date July 19, 1943.
The trial judge concluded that such evidence as plaintiff produced was insufficient to show either that Blevins defrauded plaintiff or that the modifying agreement of June 15, 1952, was without consideration or had been postdated.
Plaintiff unequivocally alleged that Blevins induced him to sign the June 15, 1952, compromise by falsely representing that "he had to settle for 1/3 Nowhere from the evidence in the record does it appear that Blevins ever made the representation to plaintiff that he had to "settle for 1/3." The only representation the evidence reflects was made appears in the modifying agreement itself when Blevins refers to "the compromise I have been able to work out of the existing litigation affecting Farm Lots 11 to 16 in Paradis."
Plaintiff also averred that "Blevins" had not, on June 15, 1952, "worked out the compromise of the litigation." This averment is not only unsupported, but, on the contrary, is entirely refuted by plaintiff's own evidence which confirms the fact that certain litigation (Sunset Realty & Planting Co., Inc. v. Aljaho Petroleum Corp., Docket No. 3029, Twenty-Ninth Judicial District Court for the Parish of St. Charles), involving the title to the Campbell property, had been settled by compromise June 3, 1952. Blevins, as a defendant and plaintiff in reconvention therein, in accordance with such compromise, moved the court to dismiss his demands in reconvention. The nature of Blevins' demands in reconvention does not appear. However, in accordance with the compromise agreement, a judgment was rendered in Sunset Realty & Planting Co., Inc. v. Aljaho Petroleum Corp. which in part provides as follows:
"It Is Further Ordered, Adjudged and Decreed that the demands in reconvention filed in this cause by Aljaho Petroleum Corporation, Hugh C. Campbell and Theresa Dennis Campbell, Chas. D. Marchand, Margaret E. Lauer, Jacques E. Blevins and Harry H. White against the Sunset Realty & Planting Co., Inc., be and they are hereby dismissed; with full reservation of the rights of said parties under the aforesaid agreement of settlement and compromise."
We do not know the nature of the conflicting claims with regard to the title to the Campbell property, but the evidence does show that on May 20, 1952, during the pendency of the dispute, The Texas Company, which was the producer of the oil from the drilling unit in which the Campbell property was embraced, provoked, under the provisions of LSA-R.S. 13:4811-4817, a concursus proceeding in the matter entitled: "The Texas Company v. Albert J. McDonald, et al," No. 314,101, Civil District *779 Court, Parish of Orleans, in which it deposited in the registry of the court some $65,000, said amount representing the oil allocated to a 1/16 royalty interest in the Campbell property, and cited several alleged claimants "to answer and make such claims to the funds deposited and to accrue hereafter as they may desire." Among those cited were Marshland Oil Corporation, Margaret E. Lauer and the executrix of Jacques E. Blevins. The concursus proceeding ultimately reached the Supreme Court and was finally decided May 23, 1955 (rehearing refused June 30, 1955). See 228 La. 353, 82 So.2d 37, 42. The Marshland Oil Corporation was recognized as owner of a 17/24 of a 1/16 overriding royalty interest and as entitled to 17/24 of the amount on deposit in the registry of the court. The decree of the Supreme Court further provided:
"(5) That the payment of said amounts to Marshland Oil Corporation shall be tantamount to the payment of said sums, to the extent of their respective interests, to Louis J. Roussel, the Succession of Jacques E. Blevins, and Margaret E. Lauer; and upon making the said payments to the Marshland Oil Corporation, The Texas Company shall be released from any further responsibility to any of the said parties."
Plaintiff has admitted that when the impounded funds became available (rehearing was refused by the Supreme Court in the concursus on June 30, 1955), he received check from Marshland Oil Corporation for $1,750. This check is dated August 16, 1955.
Thus, it appears that when Blevins wrote the letter to plaintiff on June 15, 1952, he had never up to that time received any of the proceeds from oil produced from the Campbell property because there was serious litigation involving the title thereto. It further appears that when the modifying agreement was confected on June 15, 1952, Blevins had actually entered into a compromise regarding the title dispute to the Campbell property and this bears out the statement he made to plaintiff in his letter. How much Blevins was to receive from the amount on deposit in the registry of the court in the concursus proceeding by virtue of the compromise nowhere appears.
Plaintiff's counsel point to certain transactions between Blevins, Margaret E. Lauer, and the two corporations respecting the Campbell property and argue that these demonstrate that Blevins was guilty of fraud in connection with such transfers and conveyances. Nothing in the record shows that such transactions were anything but genuine and bona fide. It may have been that Blevins' transferees in taking title to the property acted as his agents, trustees, or nominees. This thought appears reasonable for we find in the letter of August 15, 1955, written by Marshland Oil Corporation to plaintiff enclosing the check for $1,750, the statement that the corporation had received money out of the concursus proceeding as "Trustee for Mr. Blevins." Plaintiff's evidence falls far short of proving fraud on the part of Blevins in the premises.
The charge of fraud is a most serious one, and the maxim of law is that fraud is never to be imputed to anyone except upon legal evidence and the evidence must be strong and convincing, not merely probable or of a suspicious nature. Cox v. DeSoto Crude Oil Purchasing Corp., D.C., 55 F.Supp. 467; Probst v. DiGiovanni, 232 La. 811, 95 So.2d 321; Buxton v. Mc-Kendrick, 223 La. 62, 64 So.2d 844; American Guaranty Co. v. Sunset Realty & Planting Co., Inc., 208 La. 772, 23 So.2d 409; Belcher v. Booth, 164 La. 514, 114 So. 116; Strauss v. Insurance Co. of North America, 157 La. 661, 102 So. 861; Pike v. Kentwood Bank, 146 La. 704, 83 So. 904; Orr v. Walker, La.App., 104 So.2d 226; Aucoin v. Marcel, La.App., 38 So.2d 81; LSA-C.C. arts. 1847, 1848; 37 C.J.S. Fraud § 16, 22, 114.
Counsel for appellant also make the argument that plaintiff was due much more *780 than the $1,750 which he received under the modifying agreement. That may be perfectly true, but such fact in itself, under the law, would not furnish or constitute a ground for rescinding the compromise. LSA-C.C. art. 3071 provides that a transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
Transactions have, between the interested parties, a force equal to res judicata. LSA-C.C. art. 3078.
A compromise may not be attacked on the ground that one of the parties has failed to receive everything to which he may have been entitled. Young v. Glynn, 171 La. 371,131 So. 51; Beck v. Continental Casualty Co., La.App., 145 So. 810.
A compromise needs no other cause or consideration than an adjustment of differences or a desire to set at rest all possibility of litigation. Gregory v. Central Coal & Coke Corporation, 197 La. 95, 200 So. 832; DaPonte v. Ogden, 161 La. 378, 108 So. 777.
The original agreement of May 27, 1939, between the parties, specifically excluded therefrom compensation to plaintiff on any royalty or mineral interest which Blevins might have acquired for himself or for the account of others. Plaintiff is claiming a part of royalty interests which, for all we know, might have been acquired by Blevins for the account of Margaret E. Lauer or the corporations. Whether such royalty interests belonged to Blevins or to his transferees could well have been the basis for dispute and furnished the foundation for the settlement between plaintiff and Blevins.
Appellant's counsel seem to concede that the provisions of LSA-R.S. 13:-3721 would exclude any evidence going to show a debt or obligation on the part of Blevins, but they argue that said statutory provisions would not apply to parol evidence being admitted as against Margaret E. Lauer or the two corporations to show their part in a fraudulent scheme, and we are importuned to remand the case to the lower court for further proceedings so that parol evidence may be admitted insofar as said defendants are concerned.
Counsel seem not to realize that the modifying agreement or compromise entered into between Blevins and plaintiff on June 15, 1952, stands before them like Banquo's ghost. It is absolutely necessary that they first strike down the compromise between Blevins and plaintiff before any claims may be asserted against Margaret E. Lauer or the corporations. For as long as the compromise stands, we could not go beyond it and hold there is an indebtedness to plaintiff on the part of any of the defendants. Therefore, a remand of the case would be improper.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.