DOUCET, Judge.
The plaintiff, Lonnie Williamson, seeks to recover damages allegedly incurred as a result of being evicted from certain farm property.
In 1978, as a result of negotiations with Frank and Salvador Diesi, Williamson was given the right to raise soybeans on a 515 acre tract of swampland as it became available, in return for one-fourth of the crop. The property was owned by Diesi Shell Service Station Corporation and Little Capitol of La., Inc., family corporations of the Diesi family. Having only recently been cleared, the land required extensive preparation before it could be planted. Each year the defendant prepared more land for cultivation and was able to plant a bigger soybean crop.
*188 Williamson allegedly believed that an agreement existed between himself and the defendants, whereby he would be given a five-year lease on the property after the entire tract was fit for cultivation. The Diesis, however, stated that only a year to year lease existed on the land. No written lease of any kind was executed.
In 1980, after the west side of the property was cleared, it became apparent that a levee would be needed on three sides of the property to prevent flooding. In spite of flooding, Williamson continued to plant and harvest crops. The Diesis obtained an estimate of $50,000 for levee construction. Williamson, who also operates a dirt hauling business, offered to build the levee for $35.00 to $40.00 per hour. The defendants accepted the offer. Williamson stated at trial that he offered this low price because he believed that he would be able to recover any additional costs through the use of the land over the term of the five-year lease. He submitted two bills for levee construction totalling $25,340.00. This amount was paid by the defendants.
A portion of the levee located on the western side of the property could not be completed due to a boundary dispute between the defendants and adjacent landowners. The dispute was settled in July 1981. A temporary levee was built at that time.
In the fall of 1981, the Diesis told Williamson that they had been offered $60.00 per acre cash rent for the tract. They offered to continue to rent it to Williamson for that price. The appellant declined the offer. Williamson then sent the defendants a bill for $189,000.00 allegedly representing levee building costs. The defendants refused to pay.
Williamson filed suit for damages incurred as a result of the breach of the agreement to lease for five years, including levee building costs, and for damages incurred as a result of flooding on the property. The defendant reconvened asserting that the 1981 in-kind rental payment had never been delivered.
After a trial on the merits, the trial judge found that no agreement existed to grant a five-year lease after the property was fit for cultivation.
The trial judge dismissed the main demand finding that the plaintiff failed to carry his burden of proof. However, the court found that the defendants owed the plaintiff a total of $12,041.65 for levee work and work on defendants’ pump.
The court further ruled that the plaintiff owed the defendants the rent for the 1981 crop year and the return of a pump wrongfully converted. Williamson appeals this ruling. With regard to the main demand, Williamson asserts several errors on the part of the trial judge. He asserts that the trial judge erred in awarding only $40.00 an hour for levee building to the plaintiff-appellant. Williamson contends that no contract can have existed for levee construction since there was no consent as to price between himself and the defendants. Therefore he argues that his claim should be evaluated on a quantum meruit basis.
The trial judge however, found that an agreement did exist between the parties to build a levee for $40.00 per hour. We cannot disturb this factual finding absent manifest error on the part of the trial judge.
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appel *189 late court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
Canter v. Koehring, 283 So.2d 716 (La.1973). Williamson’s own testimony at trial establishes that he agreed to build the levee for a price range of $35.00 to $40.00 per hour. Therefore, we cannot find that the trial judge lacked an adequate factual basis that a contract existed to build the levee for $35.00 to $40.00 per hour.
The plaintiff next argues that the trial court erred in recognizing a compromise between the parties with regard to the number of hours of dragline use involved in construction of the levee.
At the end of the trial on the merits the trial judge, after giving his reasons for judgment, asked that the parties submit a compromise figure on the number of hours of levee work left unpaid by the defendants. Counsel for the defendants submitted a judgment which had been approved by counsel for the plaintiff. The judgment included, in addition to other itemized hourly levee construction figures, a figure of 94.5 hours of dragline time which was indicated as a compromise between the parties.
The plaintiff-appellant now argues that this compromise figure should not be accepted by the court because it was only a “maneuver for purposes of ending the District Court trial and hasten the commencement of the appellate process.”
While the appellant argues that this was not in reality a compromise, it seems to fit the definition of a compromise or transaction given in La.C.C. art. 3071:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding ...”
By approving the judgment and allowing it to be signed without objection, the appellant has entered a compromise. A compromise takes on the authority of a thing adjudged. It cannot be attached on account of an error of law or of any lesion. La.C.C. art. 3078.
Nor may it be attacked, as appellant seems to attempt here, on the ground that a party did not receive everything to which he might have been entitled. Collier v. Administrator, Succession of Blevins, 136 So.2d 774 (La.App. 4th Cir.1962).
There is no contention that the appellant entered this compromise as a result of fraudulent representations or coercion, or as a result of an error as to the person. La.C.C. art. 3079. Therefore, this matter has acquired the authority of a thing adjudged and cannot be changed simply because the appellant now regrets his action.
Also with regard to the main demand, appellant argues that the trial court should have awarded damages for losses incurred as a result of the flooding of the property.
Williamson contends that this damage resulted from a vice in the property, which was a propensity for flooding. Therefore, he argues that under the provisions of La. C.C. art. 2695, the defendants are bound to indemnify him for losses caused by their failure to install an adequate pump and to timely settle the boundary dispute which made finishing the levee impossible.
The trial court dismissed these contentions and awarded only $466.65 for work done by Williamson on the defendants’ pump.
La.C.C. art. 2695 provides that:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should *190 result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
We can find no instance in which this provision was applied to a condition inherent in leased farm acreage, such as a propensity for flooding. Rather, it has generally been applied to buildings and other man-made structures, with vices more under the control of man.
Even if we assume that La.C.C. art. 2695 is applicable, we do not believe that the defendant has carried his burden of proof. In order to recover under that article, the lessee must prove damages resulting from the vice or defect. Latham v. Aetna Casualty & Surety Co., 377 So.2d 350 (La.1979).
Both Williamson and his wife testified that certain land preparation was necessary after the flooding. However, it was not clear which part, if any, of the preparation was made necessary by the flooding and which part was ordinary soil preparation in the normal course of farm work. No evidence was introduced relative to quantum of crop damages. From the record, each year’s harvest appears to be better than the last. Finally, it is far from clear that the delay in finishing the levee was due to any unreasonable delay in settling the boundary dispute, as the appellant argues. The delay would seem, at least in part, to be due to the appellant’s own failure to devote himself to the job for which he had contracted.
We believe that the trial judge had an adequate factual basis for limiting recovery to the value of repairs shown to have been made on defendants’ pump. Since there is no indication of manifest error, we will not disturb his ruling. Canter v. Koehring, supra.
With regard to the reconventional demand, appellant argues that the trial court erred in finding him liable for the rent for the 1981 crop year.
Since the crop was lost when the grain elevator in which it was stored went bankrupt, the appellant argues that he is due an abatement of rent.
The appellant is correct in stating that where the rent is to be paid in kind, a tenant is entitled to an abatement of rent for the unforeseen loss of a gathered crop, if there has been no unreasonable delay in delivery of the lessor’s portion of the crop. La.C.C. art. 2744. However, we believe that the trial judge was correct in finding that the rent payment was due and owing.
An abatement of rent for loss of a gathered crop under La.C.C. art. 2744 may be received only where there has been no unreasonable delay in delivery of the lessor’s portion of the crop.
At trial, Mr. Williamson’s own testimony revealed that in prior years the in-kind rent payment had been made by giving to Mr. Frank Diesi a copy of the grain storage ticket marked with the portion belonging to the defendants, soon after the crop was stored. The defendants could then use their copy of the grain ticket to sell their portion of the crop or otherwise dispose of it at their discretion. In 1981 however, no grain tickets were delivered to the defendants. Therefore, the appellant never received delivery of the 1981 in-kind rent payment. As a result of this failure to deliver, no abatement of rent is due to the appellant under La.C.C. art. 2744.
For the foregoing reasons, we affirm the decision of the trial court.
AFFIRMED.