BOWES, Judge,
dissenting.
I sincerely disagree with most of the reasoning and conclusions reached by my esteemed and learned colleagues constituting the majority in this ease.
In my view, the majority opinion correctly states that the threshold issue in this case “is whether the exchange between Ms. Carter and Alliance can be characterized as a compromise or transaction.” The majority then concludes that a valid compromise was reached between plaintiff and Alliance. I disagree with this conclusion because I deem it to be erroneous for the following reasons.
LSA-C.C. art. 3071 provides in part:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
By its very nature, a valid compromise is an agreement wherein each side gives up something to which he is entitled. The majority suggests that plaintiff (Tracy Carter) gave up her right to pursue Alliance for liability and damages in exchange for the settlement tendered by them. However, plaintiff’s damages were never covered by the policy issued by Alliance and, Alliance was never liable to her. Therefore, plaintiff gave up nothing, as she was never entitled to collect for damages in the first place.
In my view, the compromise between plaintiff and Alliance is not a bilateral contract, reflecting mutual concessions and/or compromises. I would characterize the agreement between plaintiff and Alliance as a “unilateral” contract wherein Alliance received nothing in exchange for its payment to plaintiff.
In Williams v. Winn Dixie, 447 So.2d 8, 10 (La.App. 4 Cir.1984), the court recognized that a unilateral agreement could not constitute a valid compromise and could not support a defense of res adjudicata. There the court said:
Plaintiff argues that the release must be supported by valid consideration in order to be res judicata. She correctly points out that a mere ‘unilateral ‘release,’ whereby without any shown or proven consideration one party receives nothing in exchange for the release of his claim, does not meet the legal requirements of a valid compromise which is res judicata between the parties. Biel-kiewicz v. Rudisill, 201 So.2d 136 (La. App. 3d Cir.1967). We agree the release must comply with C.C. Art. 3071 regarding compromise agreements. Bielkiew-icz, supra.
At the time plaintiff signed the release, Art. 3071 provided [in pertinent part:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the
*132 manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. [Emphasis supplied by the court].
* # * # He #
Defendant’s release does not purport to be a bilateral contract reflecting mutual concessions or compromises. Plaintiff agreed to release Winn Dixie ‘from all types of civil liability,’ but there was no specified consideration. Indeed, the form negated any consideration by providing T voluntarily sign this statement, of my own free will and without force, threats or promises....
The Fourth Circuit then cited, with approval, the holding of Bielkiewicz v. Rudi-sill, 201 So.2d 136 (La.App. 3 Cir.1967):
In Bielkiewicz, supra at 191, a similar ‘unilateral release’ was held insufficient to bar plaintiff's lawsuit. The court held:
In the present case, however, the instrument relied upon — the Department of Public Safety (DPS) release form — cannot be considered to be a written compromise entitled to the binding force of the thing adjudged. A unilateral ‘release,’ whereby without any shown consideration one party receives nothing in exchange for the release of his claim, simply does not meet the legal requirements of a valid compromise which is res judicata between the parties (see Haley v. Badon, La.App. 4 Cir., 98 So.2d 109):
A compromise is defined in LSA-C.C. Art. 3071 as an agreement by which the parties adjust their differences to prevent or to put an end to a law suit. Collier v. Administrator, Succession of Blevins, La.App., 4 Cir., 136 So.2d 774. A compromise is a bilateral contract. ‘When one party has all to gain and nothing to lose, no compromise results.’ Comment, Compromise in Louisiana, 24 Tul. L.Rev. 282, at 285 (1940). Green v. National Life & Acc. Ins. Co., La.App. Orl.Cir., 183 So. 604.
Id. at p. 10. [Emphasis supplied].
In the case before us, as in the above cited cases, Ms. Carter “had all to gain and nothing to lose."
My esteemed colleagues state that “Alliance made an error of law when it assumed Ms. Jefferson’s policy included liability as well as collision and comprehensive coverage. It cannot now attack its compromise for this error of law. LSA-C.C. art. 3078;” and in support of these conclusions they cite the case of Aetna Cas. & Sur. Co. v. Landry, 578 So.2d 537 (La.App. 3 Cir.1991). In that case, Aetna paid death benefits in a worker’s compensation claim to the decedent’s mother instead of the woman he was living with and their unborn child as a result of the claims representative reaching his erroneous legal conclusion that an illegitimate child and a concubine would not be entitled to death benefitsf.]” Id. at 541.
No such erroneous legal conclusion was reached in this case. In my opinion, Alliance’s claims adjuster made a mistake of fact not law, in assuming that Ms. Jefferson’s policy included liability insurance when, in fact, the policy contained no such coverage. A compromise may be rescinded when there exists an error “on the matter in dispute.” LSA-C.C. art. 3079.[1] Succession of Morvant, 578 So.2d 549 (La.App. 3 Cir.1991).
Accordingly, I believe that no valid compromise was ever reached between Tracy Carter and Alliance and therefore no compromise existed in this case to allow plaintiff to raise the defense of res adjudicata.
In addition, I do not feel that the agreement between plaintiff and Alliance, should constitute or sustain a plea res adjudicata to Alliance’s claim against plaintiff in any event under the circumstances of this case.
At the time the agreement at issue was confected, LSA-R.S. 13:4231 provided that in order for res adjudicata to be applicable “[t]he thing demanded must be the same; *133 the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.” I disagree with the majority’s conclusion that these conditions are met in this case because I do not believe that the thing demanded is the same, nor is the demand founded on the same cause of action. As the majority states, “money for the damage to Ms. Carter’s automobile” and “recovery of damages to the car and Ms. Carter’s right to compensation from Alliance” was the “thing demanded” and “the cause of action” in the alleged compromise agreement between Ms. Carter and Alliance. However, this suit involves the return of sums mistakenly paid to Ms. Carter. Thus, I would find that res judicata does not bar this suit for recovery.
Finally, if Alliance cannot recover the sums it paid to Ms. Carter under the codal articles which allow recovery for payment of a thing not due, (the remedy at law upon which Alliance bases its claim for relief), it is my considered opinion, and logic dictates, that Ms. Carter has been unjustly enriched at the expense of Alliance.
It is well settled now, and we have held before, that there are five requirements which must exist in order to find an unjust enrichment:
(1) an impoverishment;
(2) an enrichment;
(3) a connection between the impoverishment and the enrichment;
(4) the absence of justification for the enrichment or impoverishment; and
(5) the absence of another remedy at law.
Southern States Equipment Co., Inc. v. Unique Services, Inc., 525 So.2d 1198 (La.App. 5 Cir.1988).
It is clear that Alliance suffered an impoverishment and Ms. Carter gained an enrichment as a result of Alliance’s payment of money to Ms. Carter. There was no justification for either the impoverishment or the enrichment. Since Ms. Carter was not entitled to collect under the policy issued by Alliance. And, if Alliance cannot pursue a claim for return of a payment not due, as the majority holds, it has no legal recourse and thus no remedy at law. Thus, the five conditions necessary to find an unjust enrichment are satisfied and this Court should decide this case on this basis if it chooses to deny Alliance recovery under another theory of law.
Therefore, it appears to me that the position taken by the majority condones the unjust enrichment of Ms. Carter at Alliance’s expense.
Long ago, the law gave up its penchant for adhering to strict technicalities such as denying relief for failure to cross a “T” or dot an “I” in favor of equity and fairness. I find that the position taken by the trial judge illustrates the typical example of ignoring concepts of fair play and of trampling on equities for the luxury of calling the agreement reached between individual plaintiff, Tracy Carter, and Alliance Insurance Company a “compromise.” To emphasize the fallacy of this approach and the majority’s position, and the extent of the injustice that could be caused, we need only to suppose that the amount of this so called fair “compromise” was $1,000,000.00 instead of $3,343.22 (which it could just as well have been). Would my esteemed brothers then still call this horrendous injustice a fair compromise and bar any redress or justice from being obtained by the corporate insurer from the unjustly enriched individual on the grounds of res adjudicata? I think not — for then the magnitude of their conclusions in this case would stand out like neon lights.
Because the plaintiff did not contribute to the mistake involved herein, I would allow her attorney fees and nominal damages for the inconveniences caused as a result of entering into the agreement with Alliance which was a result of Alliance not properly ascertaining the terms of the policy. However, I would not allow her to keep the money given to her by Alliance, since she was most certainly unjustly enriched at the expense of Alliance who owed her nothing under the facts of this case and the undisputed terms of the police involved.
*134 In my judgment, to allow Tracy Carter to keep the money paid by Alliance to her by mistake, because of sheer ignorance of the correct policy terms, is absolutely legally, ethically and morally wrong. She had no claim for any sum whatsoever against Alliance under the correct terms of Jefferson's policy with Alliance so by no stretch of logic, the law, or the imagination, can she have any claim to a “compromise.” She had nothing to give up under the terms of the policy and any money paid to her by Alliance under the mistaken belief that she did have something to give up should be returned to Alliance as a moral obligation.
Accordingly, I would annul the judgment of the trial court; I would overrule the exception of res adjudicata; I would hold that there has been an impoverishment of Alliance and an unjust enrichment of Tracy Carter; I would order her to return to Alliance within 14 days from the date of this judgment the money that was paid to her under the so called compromise, and in default thereof, I would order her to pay legal interest on this amount until paid; Finally, I would remand the case to the district court with instructions to have an evidentiary and contradictory hearing to determine the amount of attorney fees and nominal damages due Tracy Carter for whatever inconveniences were caused her by Alliance’s erroneous interpretation of the Jefferson Policy.
I conclude with one last thought. Apparently the Supreme Court of Louisiana has not yet taken a position on the issues presented in this case through both the majority opinion and this dissent; and it further appears that there may be some conflict among the Circuit Courts of Appeal on these and related issues. Therefore, it is my hope that the Supreme Court will review this matter and express an opinion that all circuits will have to follow in the future.
Accordingly, I respectfully but vehemently DISSENT.

. LSA-C.C. art. 3079 provides that “A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence.”