273 So.2d 655 (1972)
William M. CARLTON, Jr.
v.
GREAT AMERICAN INSURANCE COMPANY et al.
No. 5195.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 1972.
Rehearing Denied March 13, 1973.
Writ Denied May 17, 1973.
*656 Cameron C. Gamble, New Orleans, for plaintiff-appellant.
E. Gordon Schaefer, Jr., New Orleans, for defendants-appellees William Harvey Moynan, American Southern Ins. Co. and Canadian Universal Ins. Co.
Robert J. Young, Jr., New Orleans, for defendant-appellee Great American Ins. Co.
Before CHASEZ, BOUTALL and BAILES, JJ.
BAILES, Judge.
The appellant, William M. Carlton, Jr., alleges that while driving his automobile on the proper side of North Broad Street in the City of New Orleans, on November 11, 1969, he was struck from the rear by an automobile owned and driven by defendant William Harvey Moynan. Some eight months after the accident but prior to the filing of this suit, appellant and his employer, Travelers Insurance Company, entered into a compromise of their respective claims for damages and recovery of benefits paid under the Workmen's Compensation Act of this State and executed a release of defendants, Moynan and one of his insurers, American Southern Insurance Company "and all other persons, associations and/or corporations" from any and all liability arising out of this accident.
Plaintiff-appellant brought this suit against Great American Insurance Company, American Southern Insurance, Canadian Universal Insurance Company and William Harvey Moynan, seeking recovery of damages for personal injuries received in this accident, and by intervention, Travelers Insurance Company seeks to recover the value of all benefits which it expended under the Louisiana Workmen's Compensation Statute for treatment of plaintiff's injuries.
After answering and initiating third party action against Great American Insurance Company, defendants, American Southern Insurance Company and Canadian Universal Insurance Company and William Harvey Moynan filed an exception of res judicata, alleging therein that a compromise agreement was entered into between the parties wherein plaintiff-appellant agreed to accept the sum of $2,900.00 in settlement of all claims against named defendants.
A similar exception of res judicata was filed by these defendants against the claim of Travelers Insurance Company. This exception alleges that the intervenor agreed to compromise its claim for recovery of medical expenses expended by it under its liability for Workmen's Compensation benefits for the sum of $2,000.00 which was paid to intervenor.
After trial of the exceptions of res judicata, the district court sustained the exceptions as to all defendants, including Great American Insurance Company, and dismissed plaintiff's and the intervenor's suit. From this judgment, plaintiff has appealed; however, as intervenor, Travelers Insurance Company, did not appeal, *657 the judgment dismissing its intervention is now final.
Crawford and Company was retained by American Southern Insurance Company, an insurer of Mr. Moynan, to represent Mr. Moynan and it in adjustment of plaintiff-appellant's and intervenor's claim.
Sometime thereafter, appellant and Travelers was contacted by Mr. Wayne Steele, an adjuster of Crawford and Company, relative to negotiating a settlement of the claims of both Mr. Carlton and Travelers.
As the result of negotiations between Mr. Steele, Mr. Carlton, and a representative of Travelers Insurance Company it was agreed that American Southern Insurance Company, as the insurer of Moynan, would pay to Travelers Insurance Company the sum of $2,000.00 and to Mr. Carlton $2,900.00. This latter amount of $2,900.00 was also to be used by Travelers Insurance Company as consideration for the compromise and settlement of Mr. Carlton's future compensation benefits due him by Travelers. The check for $2,900.00 payable to Mr. Carlton was delivered to Travelers and after the Civil District Court of Orleans Parish refused to approve the compromise and settlement proposed by Travelers, the $2,900.00 check was not delivered to plaintiff.
The following testimony was presented in the district court on the question of what representations were made by Mr. Steele as agent for both defendants, American Southern Insurance and William Harvey Moynan, as to the amount of insurance coverage available for payment of plaintiff's and intervenor's claim for damages:
Mr. William M. Buford (Manager of Travelers New Orleans Claim Office) testified:
"By Mr. Gamble:
"Q Now, did Mr. Steele or anyone from Crawford Adjusting Company, to your knowledge, ever inform you during negotiations or during the settlement that there was not other insurance available other than this American Southern Policy of $5,000.00?
"A Did he ever tell me that?
"Q Yes.
"A Yes, sir, that was the basis upon which we were going to compromise on our lien.
"Q That's the reason you were going to compromise your lien?
"A Yes.
"Q The reason for it was you knew the whole settlement was going to be made by all parties?
"A Yes, we were going to waive the portion of our lien for the purpose of trying to allow Mr. Carlton to obtain more funds out of his claim.
"Q And the reason for this was that you had been informed there were no other monies available to pay your lien or any other damage claim?
"A Yes, sir."
Mr. Wayne Steele (Crawford and Company Adjuster who represented both American Southern Insurance Company and William Harvey Moynan in settlement of this damage claim) testified:
"By Mr. Gamble:
"Q In your negotiations for settlement with Travelers and Mr. Carlton, did you inform them that there was not other insurance except the American Southern policy for $5,000.00?
"A I informed Carlton and Travelers there was only one policy, American Insurance Company.
"* * *
"Q Did you tell him there was no other insurance?
"A I did.

*658 "Q Did he ever inform you specifically that's the reason that he was entering into this agreement for this amount of money, not more was because this was all of the available, only insurance money available?
"A I don't remember if Mr. Carlton put it in those exact words.
"* * *
"Q Did he put it in substantially similar words, it might be quite a while to remember, any words as closely as to what he said.
"A Mr. Carlton at one time did, to be honest, asked me was there any other insurance available and I told him, to my knowledge there was no other insurance available, and that would be my answer to your question."
Mr. Carlton, the plaintiff, testified:
"By Mr. Gamble:
"Q During your settlement negotiations with Crawford Adjusting Company or anyone representing them, was there any representations made to you concerning the insurance available?
"A No, other than that it was the $5,000.00 policy limits, that's all they could accept for it, take it or leave it.
"* * *
"Q During your settlement negotiations with Crawford Adjusting Company, were you ever informed or did you, during this time did you have any knowledge of the insurance coverage that Mr. Moinan [sic] had?
"A No, other than the $5,000.00, the $5,000.00 policy limits.
"Q What insurance Company, did somebody inform you of that?
"A Mr. Steele informed me the only insurance, he told me that Moinan [sic] was an overaged driver and the only insurance that he could get was the basic 5-10-5 policy.
"Q Now, at this time that you stated that you had discussed settlement with Mr. Steele, prior to the actual settlement you had agreed to meet him at Howard Johnson's, is that correct?
"A Yes.
"* * *
"Q At that time had Mr. Steele informed you or anyone informed you of the insurance coverage available in this case?
"A Mr. Steele informed me that there was a 5, 10 and 5 policy with American Southern and that was it.
"Q Was this at the time of the discussion about the settlement in Howard Johnson's?
"A Yes."
In the answer filed by defendant, Moynan, he alleged that he had issued to him liability policies by American Southern Insurance Company and Canadian Universal Insurance Company. In the separate answers filed by defendants, American Southern Insurance Company and Canadian Universal Insurance Company, each alleges that it issued policies of liability insurance designating William Harvey Moynan as the insured and that the policy issued by Canadian Universal Insurance Company is an excess insurance policy.
Although plaintiff has made Great American Insurance Company a defendant alleging it to be a primary insurer, defendants, Moynan, American Southern Insurance Company and Canadian Universal Insurance Company have impleaded Great American Insurance Company as a third party defendant, alleging it to be a coprimary *659 insurer. No answer had been filed by Great American Insurance Company.
On the basis of the pleadings it appears clear and beyond dispute that at the time of the accident Mr. Moynan was insured under at least two public liability insurance policies, one by American Southern Insurance Company and the other by Canadian Universal Insurance Company. According to an allegation of Moynan's answer, he also had public liability coverage under a policy issued to him by Great American Insurance Company.
The appellant, before this court, argues that the compromise and release of his claim for damages against Moynan is null and void because of error in the cause or motive for entering into the agreement of release.
In the dealings between plaintiff and Mr. Steele, the adjuster of Crawford and Company, Mr. Steele was acting as agent both for Mr. Moynan and the American Southern Insurance Company. This is admitted by appellees in their brief. As agent for Mr. Moynan, Mr. Steele is charged with constructive knowledge of whatever information Mr. Moynan possessed relative to his own liability insurance coverage. From the pleadings of the parties involved it is admitted that Mr. Moynan had insurance coverage not only with American Southern Insurance Company but also with Canadian Universal Insurance Company. From the third party pleadings filed by Mr. Moynan, for the purpose of this opinion, it must be assumed that Great American Insurance Company was also a liability insurer of Mr. Moynan.
Therefore, the conclusion is that Mr. Moynan at the time of the accident was insured by at least two, and perhaps three, liability insurance policies. Equally so, the conclusion, at this stage of the proceeding, must be reached that Mr. Carlton had received serious injuries in the subject accident and, under the alleged facts surrounding the accident, the fact of legal liability of Mr. Moynan is not questioned.
Insofar as we can determine from the testimony of the participants in the compromise of this claim the question of fault of the plaintiff was never an issue and was not considered an issue by the adjuster because the insurer paid 49/50th of its exposure of $5,000.00.
All of the above information was within the knowledge of both Mr. Carlton and Mr. Steele, except Mr. Carlton did not have knowledge of the existence of any liability insurance coverage save and except the minimal coverage provided by American Southern Insurance Company.
As exemplified by the testimony quoted supra, both Mr. Carlton and Mr. Buford of Travelers Insurance Company sought to obtain a full disclosure of the Moynan coverage, which inquiry was corroborated by Mr. Steele who readily admitted that he told Mr. Carlton that the only coverage Mr. Moynan had was the American Southern Insurance Company coverage of minimum limits.
Appellant relies on and refers us to the case of Cole v. Lumbermens Mutual Casualty Company, La.App., 160 So.2d 785 (1964) as authority for the setting aside of the release. Admittedly, the facts of the Cole case, as set forth in the opinion, are much stronger and the practice more reprehensible than the facts of the instant case, nevertheless the principles of law involved are the same.
We find much of what the court said in the Cole case apropos to the instant case and actually dispositive of the issue of validity of the release.
With approbation, we quote the following from the Cole case, cited supra:
"[1] Under the civilian law of obligations, legally given consent of both parties is requisite to the validity of a contract, so that there is no consent and no valid contract where the consent has been produced by error or fraud. LSA-C.C. Arts. 1779, 1819, 1824.

*660 "[2] Compromises are a species of contract which cannot be attacked because of error of law, but which may be rescinded because of error of fact, or in the case of fraud. LSA-C.C. Arts. 3078, 3079. However, as stated in McCastle v. Architectural Stone Co., La.App. 1 Cir., 4 So.2d 120, 123:
"As a general rule, a compromise settlement cannot be set aside for an error of law alone, yet if the error was caused by what was said or done by the other party under such circumstances as to lead the person in error to rely on such act or statement, there is such a mistake as will justify setting aside the agreement. C.C. Art. 3079; Reed v. Holderith, 3 La.App. [378], 379; 15 C.J.S. Compromise and Settlement § 36c, p. 758.'
"An error of fact is that `which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.' LSA-C.C. Art. 1821. It is not every error that will invalidate a contract, only an error as to some point `which was a principal cause for making the contract', including error `as to the motive for making the contract'. LSA-C.C. Art. 1823.
"As to error in the motive, LSA-C.C. Art. 1824 provides: `The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent.' Further, `The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.' LSA-C.C. Art. 1825.
"Likewise, and it is important to note the words italicized by this court: `No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.' LSA-C.C. Art. 1826. Additionally, `* * * wherever the motive is apparent, although not made an express condition, if the error bears on that motive, the contract is void. * * *', LSA-C.C. Art. 1827.
"See, for excellent discussion, Smith, A Refresher Course in Cause, 12 La.Law Rev. 2, 29 (1951).
"Such principles also apply to the annulment of a compromise on the ground of error. LSA-C.C. Arts. 1828-1830. `But if the compromise be of all differences generally, and there were other subjects of dispute, besides that in which the error existed, of sufficient importance to raise a presumption that, even if the error had been discovered, the compromise would still have been made, then such error shall not invalidate the contract.' LSA-C.C. Art. 1831 (That is, if there had been a genuine dispute as to negligence, etc., then the erroneous belief of the Cole parents might nevertheless not have been sufficient to annul the compromise, in the absence of fraud.)"
We find that appellant, Carlton, entered into the contract of compromise and release by reason of an error of fact as to the principal, or at least a material cause of the contract. The error of fact was that defendant, Moynan, had only minimum limits of liability insurance coverage with one insurer, American Southern Insurance Company. This error of fact was known by both Moynan and American Southern Insurance Company, through Mr. Steele, to be the sole and only reason for the agreement of compromise and release, and this error was induced by the false representations of Mr. Steele, as agent for both Mr. Moynan and American Southern Insurance Company. This was an invalid procurement of the consent of appellant, Carlton. If *661 Carlton had known of the additional insurance coverage on Moynan's automobile he would not have compromised his claim of $2,900.00.
Appellees argue the absence of error of fact and would distinguish the instant case from the Cole case, supra, by pointing out that herein there was not "quickie" release and there is no indication that Mr. Moynan was insolvent.
We recognize these factual differences between Cole and the instant case, however, this does not alter the fact of false representations by Mr. Steele and that these misrepresentations were the principal cause of the contract and that Carlton relied on this false representation to his detriment.
Appellees further argue the absence of proof of fraud.
Under Civil Code Article 1847 which we quote, in part, as follows:
"1. Error is an essential part of the definition; an article [artifice] that can not deceive can have no effect in influencing the consent, and can not injure the validity of the contract.
"2. The error must be on a material part of the contract, that is to say, such part as may reasonably be presumed to have influenced the party in making it; but it needs not be the principal cause of the contract, as it must be in the case of simple error without artifice. * * *
"* * *
"5. It must be caused or continued by artifice, by which is meant either an assertion of what is false, or a suppression of what is true, in relation to such part of the contract as is stated in the second rule. [Clause 2 quoted above.]"
it is not necessary to find fraud to vitiate the contract, if it is found that the error of fact was the motive or principal cause of the contract. This we have found.
For the foregoing reasons, the judgment of the trial court sustaining the exception of res judicata is reversed and set aside, and further there is judgment herein declaring the act of compromise and release entered into between appellant, William M. Carlton, Jr., and appellees, William Harvey Moynan and American Southern Insurance Company, dated July 24, 1970, of the accident involving said parties on November 11, 1969, null, void and of no effect; and finally there is judgment remanding this case to the district court for further proceedings not inconsistent with this judgment and in accordance with law. All court costs of both the trial court and this court attributable to the exception of res judicata are assessed against appellees; all other court costs to await final judgment.
Reversed and remanded.