HALL, Judge.
Betty L. Anderson, the original defendant in this suit brought against her by American Bank and Trust Company in Monroe, instituted the present proceeding seeking to set aside a compromise and settlement entered into between her and the other parties to the suit, and the judgment of dismissal rendered in accordance with the compromise agreement. The district court rejected her demands. We reverse in part and set aside the compromise and judgment of dismissal as to the claims by Mrs. Anderson against Kerry Anderson.

Background Facts

Mrs. Anderson and Kerry Anderson were married in June 1976 after entering into a marriage contract stipulating against community property. In December 1976 Mrs. Anderson signed a continuing guaranty agreement guaranteeing any indebtedness of Kerry to the bank up to $50,000. On May 2, 1977 she obtained a loan from the American Bank, of which she was a substantial depositor, for $10,740 and signed a *DXXIII note for that amount. She deposited the proceeds of the loan in Kerry Anderson’s business account. Kerry Anderson used $2,600 to purchase a boat and invested $8,000 of the proceeds in a business venture known as Purveyors, Inc. A share certificate for 100 shares of Purveyors, Inc. stock was issued to Kerry, together with a demand note of the corporation for $10,000, representing the $8,000 paid to the corporation and $2,000 for services rendered by Kerry. Stock certificates and similar notes were issued to the other four shareholders. Kerry pledged his stock certificate and note to the bank as collateral for Mrs. Anderson’s $10,740 note.
In December 1977 the $10,740 note came due and when Mrs. Anderson failed to pay it, the bank applied a savings account held by Mrs. Anderson in payment of the note. The bank continued to hold the stock certificate and Purveyors’ note as collateral for others loans to Kerry under a general collateral pledge agreement executed by him.
In January 1978 the bank filed suit for $10,000 against Mrs. Anderson on her continuing guaranty agreement, based on an unpaid and past due note for that amount signed by Kerry Anderson in May 1977. The bank did not name Kerry as a party defendant. Neither did it name as a defendant Kent Anderson, Kerry’s brother who was president of the bank, and who had also signed a continuing guaranty agreement guaranteeing Kerry’s indebtedness to the bank for a much larger amount.
Mrs. Anderson answered denying that the continuing guaranty agreement covered this note. She reconvened against the bank to recover the more than $10,000 applied from her savings account to the first $10,-740 note. She also filed a third party demand against Kent Anderson seeking contribution from him as co-guarantor or surety. She also made a third party demand against Kerry Anderson for indemnity for any amount she had paid and might be required to pay the bank. Kent, in turn, filed a reconventional demand against Mrs. Anderson for contribution as a co-guarantor or surety on this and other debts of Kerry which Kent alleged he had paid under his continuing guaranty agreement.
All parties were represented by counsel. However, with the agreement of all concerned, negotiations for settlement were carried on between Anthony Bruscato, counsel for Mrs. Anderson; Kent Anderson; Lynn Tubb, a bank executive who is also a lawyer; and Ralph Abraham, another executive of the bank. An agreement was reached whereby all claims would be settled with Mrs. Anderson to pay the bank $3,000 and with the Purveyors stock certificate to be transferred to Mrs. Anderson. Neither Mrs. Anderson nor her attorney knew of the existence of the $10,000 note from Purveyors to Kerry held in pledge by the bank. Neither Kerry nor the bank officials disclosed the existence of the note to Mrs. Anderson’s attorney.
On July 21, 1978, a Friday, Lynn Tubb delivered three instruments prepared by him to Mrs. Anderson’s attorney at his office. One was a document to be signed by Mrs. Anderson releasing Kerry in consideration of the transfer by him to her of the shares of stock. One instrument was a release to be signed by the bank and Mrs. Anderson releasing their claims against each other, and reciting the $3,000 payment by Mrs. Anderson to the bank. The third instrument was a mutual release to be signed by Mrs. Anderson and Kent Anderson. The first two instruments were signed by Mrs. Anderson who was present in her attorney’s office. The third instrument was not used, and another instrument was prepared by Mrs. Anderson’s attorney by which all four parties, Mrs. Anderson, Kerry Anderson, Kent Anderson and the bank, released each other from all claims involved in the lawsuit. The instrument recited the $3,000 to be paid by Mrs. Anderson to the bank but did not mention the stock certificate. Mrs. Anderson and Kerry Anderson, who was also present in the attorney’s office, signed this instrument. The instruments, signed by Mrs. Anderson and Kerry, together with Mrs. Anderson’s $3,000 check, were delivered to the bank’s executive-attorney, who was to obtain the signatures of *DXXIV the appropriate bank official and Kent Anderson on Monday, Kent being out of town and unavailable on that Friday.
The next day, Saturday, Kerry Anderson, acting in concert with another shareholder of Purveyors and with telephone consent of other shareholders, wrote checks to each of the shareholders, including himself, on the corporation bank account for the amount in the account totaling about $11,000. Kerry’s check was for $2,200. On Monday morning, July 24, before the agreements were signed for the bank and by Kent, and without the knowledge of Kent or the bank officers, Kerry went to a teller’s cage in the bank and paid the $2,200 to the bank on the note which was the subject of this suit.
During the day Monday, the instruments were signed by Kent and a bank officer. The instruments, with the stock certificate and a stock assignment form signed by Kerry, were delivered to Mrs. Anderson’s attorney on Monday afternoon. A judgment of dismissal with prejudice was signed Wednesday, July 26.
Several days later Mrs. Anderson learned of the disbursement of corporate funds to Kerry and the other shareholders, of the payment by Kerry to the bank, and of the existence of the Purveyor note to Kerry held in pledge by the bank. After her demand on the bank for payment of the $2,200 to her was refused, she filed this suit alleging fraud, mistake and error of fact. The essence of her claim is that all concerned knew that it was her intent to acquire Kerry’s interest in Purveyor and to recoup some of her losses from the corporation’s funds. It is her position that the failure of the parties to disclose the existence of the $10,000 note from Purveyors to Kerry, which would effectively preclude her hope of recovery of any money as a shareholder of Purveyors, led her into a mistake of fact as to what she was getting in the settlement, and that she would not have entered into the agreement unless she was to receive all of Kerry’s interest in Purveyors and any subsequent distribution of corporate funds attributable to his interest. In the trial court, and on appeal, Mrs. Anderson sought, alternatively, to (1) require the bank to pay her the $2,200; (2) set the entire compromise aside and return her $3,000 to her; or (3) set the compromise aside as between her and Kerry.
The trial court found that although it was Mrs. Anderson’s intention to recoup part of her loss through a distribution of the corporate funds, neither she nor her attorney ever communicated this fact to the others. The trial court acknowledged that it could be persuasively argued that such should have been obvious to the others. The court further found that the principal motive or cause of the compromise agreement as far as Mrs. Anderson was concerned was the release of liability under the continuing guaranty and that this raised a presumption that she would have made the settlement even if she had known of the note and that she would not recoup any funds. The court found that, because of the note, which would have to be paid ahead of distribution to shareholders, Mrs. Anderson would not have recouped anything from the corporation in any event.

Issue

The issue in this case is whether there was a vice or lack of consent to the compromise agreement on the part of Mrs. Anderson due to error or fraud, giving her cause to rescind the contract in whole or in part.

Applicable Law

The law applicable to this case is set forth in Cole v. Lumbermens Mutual Casualty Company, 160 So.2d 785 (La.App. 3d Cir. 1964) as follows:
“[1] Under the civilian law of obligations, legally given consent of both parties is requisite to the validity of a contract, so that there is no consent and no valid contract where the consent has been produced by error or fraud. LSA-C.C. Arts. 1779, 1819, 1824.
“[2] Compromises are a species of contract which cannot be attacked because of error of law, but which may be rescinded because of error of fact, or in the case of fraud. LSA-C.C. Arts. 3078, 3079 . .
*DXXV “[3] An error of fact is that ‘which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.’ LSA-C.C. Art. 1821. It is not every error that will invalidate a contract, only an error as to some point ‘which was a principal cause for making the contract’, including error ‘as to the motive for making the contract’. LSA-C.C. Art. 1823.
“As to error in the motive, LSA-C.C. Art. 1824 provides: ‘The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent.’ Further, ‘The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.’ LSA-C.C. Art. 1825.
“Likewise, and it is important to note the words italicized by this court: ‘No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.’ LSA-C.C. Art. 1826. Additionally, ‘ * * * wherever the motive is apparent, although not made an express condition, if the error bears on that motive, the contract is void. * * * ’, LSA-C.C. Art. 1827.

“Such principles also apply to the annulment of a compromise on the ground of error. LSA-C.C. Arts. 1828-1830. ‘But if the compromise be of all differences generally, and there were other subjects of dispute, besides that in which the error existed, of sufficient importance to raise a presumption that, even if the error had been discovered, the compromise would still have been made, then such error shall not invalidate the contract.’ LSA-C.C. Art. 1831 .
“Finally, and most pertinently here, ‘In all cases, however, when the information, which would have destroyed the error [as to the motive, or principal cause], has been withheld by the other party to the contract, it comes under the head of fraud, and invalidates the contract.’ LSA-C.C. Art. 1832.
“LSA-Civil Code Article 1847 further defines fraud, as applied to contracts, as ‘the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other.’
“This code definition of ‘fraud’ continues, LSA-C.C. Art. 1847:
‘1. Error is an essential part of the definition; an article [artifice] that can not deceive can have no effect in influencing the consent, and can not injure the validity of the contract.
‘2. The error must be on a material part of the contract, that is to say, such part as may reasonably be presumed to have influenced the party in making it; but it need not be the principal cause of the contract, as it must be in the case of simple error without artifice.
* * * sf« ‡ #
‘5. It must be caused or continued by artifice, by which is meant either an assertion of what is false, or a suppression of what is true, in relation to such part of the contract as is stated in the second rule. [Clause 2 quoted above.]
‘6. The assertion and suppression, mentioned in the last preceding rule, mean not only an affirmation or negation, by words either written or spoken, but any other means calculated to produce a belief of what is false, or an ignorance or disbelief of what is true. * * * 7 77
See also Carlton v. Great American Insurance Company, 273 So.2d 655 (La.App. 4th Cir. 1972), writ denied 277 So.2d 442 (La. 1973).

*DXXVI
Validity of the Compromise Agreements

The settlement of this lawsuit involved several compromise agreements entered into by multiple parties with multiple claims against each other. Three separate agreements were prepared and signed, to keep the claims separate according to the bank’s executive-lawyer who originally prepared the instruments. The evidence does not establish that each agreement was necessarily dependent on each of the others. Viewed in this manner, we conclude that Mrs. Anderson’s consent was validly given to the compromise agreements between her and the bank and Kent Anderson, but was not validly given to her agreement with Kerry Anderson.
The conduct of the bank and Kent Anderson did not rise to the level of fraud. Although it seems apparent that they knew Mrs. Anderson wanted the Purveyors stock because of a hope of recovering some of her loss through ownership of the stock, the evidence does not establish that the bank officials had detailed knowledge of Purveyors’ affairs — specifically the $11,000 bank account. Their general knowledge was that the corporation was a business failure and they regarded the stock, and the note, as virtually worthless. Under the circumstances, no fraudulent design can be drawn from their failure to disclose the existence of the pledged note. As found by the trial court, there were no false representations.
Since fraud was not established, the error of fact sufficient to invalidate the agreement must be as to the principal cause of the agreement and the other party must have been apprised or presumed to know of the principal cause. Here, the trial court correctly concluded that the principal cause or motive on the part of Mrs. Anderson in entering into the agreement with the bank was the release of her liability under the continuing guaranty agreement as to the $10,000 note sued on and any other indebtedness Kerry Anderson had to the bank. As to the compromise agreement between Mrs. Anderson and Kent Anderson, the principal cause or motive was the mutual release of their claims against each other. The differences which Mrs. Anderson compromised with these parties were of sufficient importance to raise a presumption that even if any error under which she labored as to other aspects of the compromise had been discovered, the compromise with these parties would still have been made. Further, they were not apprised by Mrs. Anderson that the transfer of the stock certificate was a principal cause of the agreement and the nature of the transaction and the facts known to them raised no presumption that they knew this was a principal cause.
The compromise agreement between Mrs. Anderson and Kerry Anderson presents an entirely different picture. As found by the trial court, he was the only one of the parties to the suit who knew all the facts concerning the note and $11,000 cash in the corporation’s bank account. His unilateral and secretive action in disbursing the corporation’s only liquid assets to himself and the other shareholders, after he had signed the agreement to transfer his stock to Mrs. Anderson, but before the other parties signed the agreements, materially changed the facts underlying his agreement with Mrs. Anderson. It matters not that she might or might not have been able to get part of the corporate money, a matter which need not be decided in this lawsuit. The material change in the corporate financial situation was a fact she was entitled to know in making her hope-of-winning versus risk-of-losing decision to enter into the compromise. Most importantly, the transfer of the corporate stock, based on facts as they existed at the time she and Kerry signed the agreement on Friday, was not only the principal cause of that agreement, it was the only cause or motive. Kerry had no claim against Mrs. Anderson — her only consideration for releasing him was the acquisition of his interest in the corporation. His failure to disclose the existence of the corporate note payable to him, coupled with his action in disbursing the corporate assets to himself and others after signing the agreement with Mrs. Anderson, vitiated her consent and rendered their agreement subject to rescission.

*DXXVII
Decree

For the reasons assigned, the judgment of the district court is reversed in part. It is ordered, adjudged and decreed that the compromise agreement dated July 21, 1978 between Betty L. Anderson and Kerry Anderson is hereby annuled and set aside. The order dated July 26, 1978 dismissing the demands of Betty L. Anderson against Kerry Anderson is annuled and set aside. That part of the judgment of the district court rejecting the demands of Betty L. Anderson against the American Bank and Trust Company in Monroe and Kent Anderson is affirmed. Costs of the appeal are assessed to Kerry Anderson.
Reversed in part and affirmed in part.