GARRISON, Judge.
This is a suit to determine the validity of a compromise agreement between plaintiff, Betty Ubas, and defendant, Louisiana Farm Bureau Mutual Insurance Company (Louisiana Farm Bureau), liability insurer of defendant Sidney Morales. From a judgment for plaintiff, defendant Louisiana Farm Bureau appeals.
On May 31, 1980, Sidney Morales, Jr., while operating a 1974, Chevrolet with the permission of its owner, his father, Sidney Morales, Sr., caused or allowed the vehicle to back into an apartment at 217 Concord Place in St. Bernard Parish, causing damage to the building, which was owned by a Mr. Burkhardt, and the contents of the apartment leased by plaintiff Betty Ubas.
After the accident the insurer’s agent, Jimmie Vicknair, met with the owner of the apartment building to negotiate a settlement of his claim. Based on an itemized list of property damages which Burkhardt presented to Vicknair, a draft was issued by Vicknair on behalf of Louisiana Farm Bureau in favor of Burkhardt in the amount of approximately $3,900.00.
Approximately a week after the accident, Betty Ubas, who had been out of town, returned home and was contacted by Vick-nair to discuss settlement of any claim she might have had. Upon presentation of an itemized list prepared by Mrs. Ubas, Vick-nair issued a draft in her favor in the amount of $3,187.20, in satisfaction of her claim for property damages, receiving in turn from her a receipt and release of claim. Mrs. Ubas immediately deposited this draft in her bank.
Shortly after issuing the draft to Mrs. Ubas, Vicknair realized that the insurance policy in question carried a $5,000.00 limit for property damage, and that payment of the draft to Mrs. Ubas would, when cumulated with the earlier draft to Burk-hardt, exceed those policy limits. He therefore stopped payment on the draft drawn to Mrs. Ubas. Vicknair apparently later offered Mrs. Ubas the amount which remained payable under the policy, but was refused.
Betty Ubas filed suit individually and on behalf of Brenda Ubas and Mindy Ubas, praying for damages for loss of property in the amount of $3,788.00 and for general damages of $10,000.00 for inconvenience and embarrassment. In response to defendant’s dilatory exception of lack of procedural capacity, plaintiff filed a supplemental and amended petition supplying additional information to the effect that Brenda Ubas, a major at the time of the accident, was suing in her own behalf and as tutrix of her minor daughter, Mindy Ubas. Defendant answered, averring that the proximate cause of the accident on which plaintiff based her suit was the negligence and/or contributory negligence of the plaintiffs.
At the close of plaintiff’s case at trial on December 30, 1980, defendants moved for a directed verdict. The basis of the motion was that plaintiff had not proved by a preponderance of the evidence liability or damages allegedly sustained. The motion was denied, and the trial court found in favor of plaintiff Betty Ubas and against defendant insurer in the sum of $3,187.20, plus 25% penalties, 33⅛ attorney’s fees on the principal and interest. It dismissed all other suits. Defendants have suspensively appealed that judgment.
Defendants base their appeal on their contention that the trial judge erred in the following respects: (1) in allowing plaintiff to recover under a theory of implied contract when, they allege, she pleaded her case in tort; (2) in refusing to grant defendants a directed verdict; (3) in failing to find that the compromise agreement was vitiated by error as to its principal cause; and (4) in allowing plaintiff to recover penalties and attorney’s fees.
Defendants’ first argument for reversal is based on their contention that the trial court awarded judgment to the plaintiff based on its finding that defendants breached a contract which existed between the *201 parties, when in fact, a contract or breach thereof had never been alleged in plaintiff’s petition. Defendants contend that plaintiff alleged only a tort cause of action against defendants Morales, Jr. and Morales, Sr., and allege “fault, negligence and/or fraud” against defendant Louisiana Farm Bureau. Defendants therefore rely on La.C.C.P. Art. 929, which provides that the exception of no cause of action may be noticed by this Court on its own motion, and ask that we reverse the trial court’s judgment.
We find this argument to be without merit. Although plaintiffs petition claims tortious injury, it also cites the confection by the insurer’s agent, Vicknair, of an agreement and breach thereof, in paragraphs IX and X, which read as follows:
“IX.
“That subsequent to the accident, Jimmie Vicknair, on behalf of defendants, contacted plaintiff, Betty Ubas, and appraised the damage to plaintiff’s furniture and issued defendant, Louisiana Farm Bureau Mutual Insurance Company’s draft in the amount of $3,787.00 and obtained from plaintiff a release and receipt for said property damages.
“X.
“That as a result of the sole fault, negligence and/or fraud of Jimmie Vick-nair, the draft issued by defendants was cancelled after deposit by plaintiff; the release and receipt was not returned or cancelled.”
Plaintiff has stated a cause of action for breach of contract, and she need not as such prove negligence. The insurer, while not admitting negligence, did agree to compensate plaintiff for her loss. It is the breach of this agreement for which plaintiff brings suit. The trial court did not err, therefore, in allowing recovery under a theory of breach of implied contract.
The above argument is closely related to defendants’ argument that the lower court erred in denying a motion for directed verdict. The defense motion for directed verdict alleged that there was no evidence offered to prove the negligence of defendants Morales, Jr. and Sr., the contractual negligence of their insurer, or the quantum of damages. In support of this argument defendants point out that none of them have admitted liability in the matter, and that although the insurance policy is part of the record as the result of a request for production of documents, the policy was not introduced into evidence at the trial. Therefore, they argue, coverage of Sidney Morales, Sr. by Louisiana Farm Bureau was not proven. Defendants further point out that plaintiff failed to prove any bodily injuries which would justify the trial court’s award of $3,187.20.
This argument must also fail. First, liability for the accident cannot be disputed because the agent Vicknair’s description of the occurrence is uncontradicted on the record, the alleged tortfeasor and defendant Morales failed to appear at trial and the court took cognizance of his absence. Moreover, although the insurance policy was not specifically introduced into evidence, agent Vicknair admitted the existence of coverage when he testified that he investigated on behalf of his employer an accident involving their insured, Sidney Morales. Further, plaintiff did introduce the bank draft which Vicknair issued to her, which specified both the name of the assured, Sidney P. Morales, and the policy number, AR-522753. Defendants cannot seriously contest the trial court’s finding that coverage existed for the May, 1980 /incident.
Also with reference to defendants’ claim that there was no proof of negligence or of the quantum of damages, we note that defendants erroneously characterize plaintiff merely as a tort claimant. This is not the case. The evidence establishes that plaintiff gave a receipt and release to the insurer, that plaintiff was in turn given a draft for $3,187.20, and that the insurer then stopped payment on the draft. It was on this transaction that the trial court based its award and not on bodily injuries which *202 resulted from any admitted negligence by insurer or insured.
Based on these considerations and under the law with regard to directed verdicts as enunciated in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979), we do not believe the trial court manifestly erred in refusing to grant a directed verdict for defendants at the close of the plaintiff’s case.
Defendants’ next argument is that, though a compromise and/or a contract may have been attempted by the parties, it was not binding because the requisite element of consent was lacking. In support of this argument defendants cite the following codal provisions:
“Art. 1819. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by—
Error;
Fraud;
Violence;
Threats.
“Art. 1821. That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.
“Art. 1823. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.
“Art. 1825. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.”
Defendants maintain that these articles have application to the facts before us in that agent Vicknair was operating under an error of fact, that is, a mistaken belief in the existence of policy limits which did not in fact exist, and that there consequently was a vice in the consent he gave to the agreement. Defendants further assert that Vicknair would not have issued the draft in the amount of $3,187.20 if he had been aware of the policy limits, and that his error was on a point which was a principal cause for making the contract, i.e., his desire to settle the claim within Louisiana Farm Bureau’s policy limits.
Defendants also cite La.C.C. Arts. 2301 and 2302 in support of their argument. These articles provide:
“Art. 2301. He who receives what is not due him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he had unduly received it.
“Art. 2302. He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.”
Defendants contend that the portion of the draft to Mrs. Ubas representing overpayment of the policy was a payment of a thing through a mistake, and that they are therefore entitled to reclaim that portion of the overpayment.
We disagree with plaintiff’s interpretation of the articles relating to error because of the following jurisprudence. In Carlton v. Great American Ins. Co., 273 So.2d 655 (La.App. 4th Cir.1972), writ denied, 277 So.2d 442 (La.1973), this court reversed a trial court decision sustaining insurer’s exceptions of res judicata on the ground of contract settlement and release. The injured plaintiff had entered into a compromise agreement and release of defendant auto driver and American Southern Insurance Company, believing it to be the sole insurer. The plaintiff later,discovered that the defendant carried policies with at least *203 one and perhaps two other companies and sued all three insurers on his personal injury claims. American Southern excepted, arguing that plaintiff’s release of all claims absolved it of any liability. The court found that plaintiff had effected the release by error of fact as to the material cause under the erroneous belief that the defendant driver had only minimal limits of liability insurance coverage with one insurer. The extent of coverage, known to the driver and to his insurer at the time of the compromise, abrogated plaintiffs consent to settle, and the court declared the release null and void.
While factually similar, Carlton is distinguishable: The court’s invalidation of the release because of error granted to plaintiff the right to recover for damages sustained. We note that the plaintiff’s motive for agreeing to the release in Carlton arose from a mistaken understanding of the limits of defendant’s liability policy. The instant case can be distinguished in that here the principal cause of consideration for the compromise and settlement was the existence of the policy itself, activated by defendant driver’s lack of care and plaintiff’s resulting property damage. The release was confected to circumvent a tort suit against defendant. The possibility of defendant’s tort liability was more than potential, and we believe the principal cause of the compromise agreement was to avoid that liability. The agreement, therefore, had a valid cause at its inception and would have remained valid and without objection had Vicknair not drafted a check to Burk-hardt on the same policy. It is Vicknair’s error as to the policy limits, a less than principal error, which originates the instant action.
Further, the court in Carlton declared that the agent for the insured or the adjuster is charged with constructive knowledge of whatever information the insured possessed relative to his own liability coverage. 273 So.2d at 659. This clearly includes knowledge of the insured’s policy limits. The trial court was correct, therefore, in holding that it is the duty of the insurance company and its agent to know the limits of their policy. The agent’s failure to fulfill this duty precludes the insurer from now claiming error on this basis.
With respect to defendants’ contention that the agent’s issuance of the draft to Mrs. Ubas was payment of a thing not due, and therefore recoverable under Arts. 2301 and 2302, we cite specifically Art. 2303, which states that “... A natural obligation to pay will be sufficient to prevent the recovery.” Evidence adduced at trial indicated that defendant insured caused plaintiff’s injury. Insurer has a natural obligation, even absent a contractual one, to remedy plaintiff’s damage and does not have the right to reclaim his payment.
Additionally, in interpreting Arts. 2301 et seq., we take greater cognizance than do appellants of Metropolitan Life Ins. Co. v. Mundy, 167 So. 894 (La.App. 1st Cir.1936), and Penn. Cas. Co. v. Brooks, 24 So.2d 262 (La.App. 1st Cir.1945), which hold that a party will not be allowed to recover on the ground that he has paid something to another by error or mistake when it appears that the mistake is the result of his own negligence or carelessness. The court in Metropolitan denied recovery to insurer of an amount paid to insured’s succession by mistake, noting, “... it was entirely plaintiff’s own fault when it made the payment to a void succession without any investigation whatever.”
In Pennsylvania, an insurer who made payment to third parties on an automobile liability policy which was expired at the time of the collision, was denied recovery of monies disbursed as the mistake was a result of insurer’s own careless failure to investigate.
These cases were most recently followed by this court in Mongrue v. State Farm Mut. Auto. Liability Ins. Co., 396 So.2d 466 (La.App. 4th Cir.1981). In that case the court denied an insurer recovery of monies paid to defendants in compromise of their claim for wrongful death of their son, supposedly a passenger in the automobile driven by the insured at the time of the acci *204 dent, when it was later found that the son of the defendants and not the insured, had in fact been the driver of the vehicle. The insurer claimed that the settlement was made in reliance on the police report of the accident, which indicated that their insured had been driving his own car, and that the settlement with defendants was therefore payment of a thing not due under Arts. 2301 and 2302. The court, however, cited Pennsylvania Casualty Co. and Talbot v. Douglas Moving and Warehouse Co., 228 So.2d 222 (La.App. 3rd Cir.1969) and concluded that even though the insurer was not clearly negligent, its error was not sufficient to invalidate the contract of compromise and settlement. The court stated:
“In the present case it is apparent that State Farm executed its compromise in settlement with the Beavers in a desire to set at rest all possibility of litigation with those parties, as is evidenced by the fact that the agreement was executed only three months after the occurrence of the accident. The fact that State Farm assumed that Mongrue had been the driver of his own vehicle at the time of the accident, based on a police report indicating that such had been the case is not sufficient error to invalidate the contract, the principal cause of which was simply and obviously to put at rest all possibility of future litigation between the Beavers and State Farm. Collier v. Administrator, Succession of Blevins, supra [136 So.2d 774 (La.App. 4th Cir.1962)].
“Although this court in view of the evidence cannot hold that State Farm was necessarily negligent or careless in concluding that Mongrue was the driver of the vehicle at the time of the accident, we must conclude that the cause for making the settlement was not that State Farm believed it was liable to the Beavers, as they now claim. The release itself expressly states that State Farm denies all liability to those parties and provides further that the reason for making the settlement was for the purpose of ‘precluding forever any further or additional claims arising out of the aforesaid accident.’ ” (Emphasis supplied)
Appellants cite a line of cases which follow Central Surety and Ins. Corp. v. Corbel-lo, 74 So.2d 341 (La.App. 1st Cir.1954), rehearing denied (1954), in support of their interpretation of Arts. 2301 and 2302. In Corbello, the court does grant recovery for money erroneously paid. However, the case can be distinguished on its facts from the case now before us: It involved an attempt to recover money paid to the insured on a policy which had expired. As the policy was ineffective on the date of the accident, no payment was due. Conversely, in our case the policy was in effect when the accident occurred. The insurer is therefore liable to pay damages under the policy, and cannot now recover compensation rightfully paid to the claimant, Mrs. Ubas.
Based on the law and jurisprudence discussed above, we conclude that the careless error which Louisiana Farm Bureau’s agent made was not such error of fact as would vitiate the insurer’s consent to the compromise and settlement, because it was not error as to the principal cause for making the contract. Therefore, we hold that the parties executed a valid compromise agreement, and that plaintiff is entitled to recover from defendant insurer the amount of $3,187.20 as specified in the compromise agreement.
The final issue which defendants raise is whether the trial court erred in awarding plaintiff attorney’s fees and penalties. We believe the trial court award of attorney’s fees and penalties for defendants’ arbitrary and capricious refusal to pay the damage claim must be reversed as contrary to established statutory law. LSA R.S. 22:658 imposes a penalty on insurers for failure to pay “... the amount of any claim due any insured.” The federal district court in Johnson v. Fidelity Mut. Ins. Co., 118 F.Supp. 392 (W.D.La.1954), sustained defendant insurer’s motion to strike the claim for penalties and attorney’s fees and held that a tort claimant is not an “insured” within the meaning of the stat *205 ute. Although the judgment in the instant case granted relief in contract, the contract between the parties was in settlement of a claim seeking recovery for tortious property damage. This makes plaintiff essentially a tort claimant and, as such, she is not entitled to the award.
For the above reasons, the judgment of the trial court is affirmed as to the principal amount awarded of $3,187.20, and reversed as to the award of attorney’s fees and penalties.
AFFIRMED IN PART, REVERSED IN PART,