WILLIAMS, Judge.
This is an appeal from a decision of the trial court granting plaintiff, Kathryn More & Associates, Inc. [“More”], $8,500.00 in fees owed it by defendant, La Fete de la Nouvelle Orleans [“La Fete”].
La Fete, which was formed to sponsor a summer promotional event in New Orleans, hired More to do its advertising and public *985 relations. After several months, La Fete owed More more than $25,000.00, and More was forced to withdraw as La Fete’s publicity/public relations agency. More eventually forgave the debt La Fete owed it for its fees and labor, which was $15,000.00, but expected payment for the remainder which represented out-of-pocket expenses. More informed La Fete that it was preparing to sue for the remainder which still had not been paid. La Fete made a compromise proposal to More under the terms of which More would be paid $10,500.00, $2,000.00 in cash up front and the remainder from expected revenues of a film La Fete hoped would be produced. More responded to this proposal by agreeing to postpone filing suit in favor of some up front money. Payment of the remainder of the debt is in controversy: La Fete argues payment was to be made only from film projects, and More argues that it is entitled to payment from all La Fete projects. Approximately eight months later, More made amicable demand upon La Fete for the remainder owing because it believed that several income producing projects had occurred although no payments had been made. La Fete refused to pay and More instituted this suit. La Fete filed an exception of prematurity which was denied by the trial court. This court denied writs, apparently referring it to the trial court on the merits. After trial, the court below ruled that $8,500.00 was owing to More by defendant and La Fete appealed.
On appeal, there are two basic issues for this court to decide: (1) did More and La Fete enter into a compromise agreement whereby More agreed to accept the remainder of the money it was owed from a specific source, i.e. proceeds from a film; and (2) was the amount awarded by the trial court correct?
La Fete originally offered a compromise, which in effect, pledged to More, the net proceeds it [La Fete] would receive from a film entitled “The Other Worlds of New Orleans”, that it would distribute for Vidi-luck Productions pursuant to a contract between La Fete and Vidiluck. This contract was an agreement for La Fete to distribute not one specific film but all video and audio programs produced by La Fete during calendar year 1980. Vidiluck would become the owner of the films, La Fete would be the distributor, and La Fete would recoup its distribution costs from the first revenues it derived from the film. The remaining “first net revenues” would be divided between La Fete and Vidiluck after payment of a ten percent royalty to the Louisiana Education and Television Authority, the producer of the programs.
Also attached to La Fete’s September 3 letter was a report from a production company projecting revenues La Fete would derive from a number of film projects including, “The Other Worlds of New Orleans” and another completed program; an unnamed not yet begun “multi-part series”; and other “footage” which could be produced in the future.
In response to this letter and these attachments More replied that the proposal, which was confined to the one film’s revenues, was not acceptable; but More would, in effect, accept a pledge of revenues La Fete would receive from all of the film projects covered by the contract between La Fete and Vidiluck and analyzed by the production company. Furthermore, La Fete would pay More all of the “first net revenues” defined in the contract between La Fete and Vidiluck before La Fete paid anything to Vidiluck and Louisiana Educational Television Authority.
More’s intention is clear when all of the correspondence and attachments are considered together: “... We request that the outstanding amount of $8,000.00 be paid following distribution of expenses as outlined in Paragraph 2 of the [contract between La Fete and Vidiluck].... This would be as indicated in this paragraph, the revenues termed ‘first net revenues’ and that would be on all projects and not limiting it to any particular [one].” This provision required a pledge of all revenues arising out of the contract and not just the one film as proposed by La Fete. With this agreement More was willing to forbear filing suit. From the documents taken to *986 gether it is equally clear that More did not expect to be paid from any non-film projects undertaken by La Fete because the contract between La Fete and Vidiluck concerned films only. La Fete accepted More’s counter-proposal as submitted.
We disagree with the trial court’s interpretation of the agreement. Even assuming that the contract contains some ambiguity, we are required to construe such doubt against the maker. La. Civ. Code arts. 1957-59. E.g., St. Romain v. Midas Exploration, Inc., 430 So.2d 1354, 1358 (La.App. 3d Cir.1983). We must resolve any doubt in favor of defendants, because plaintiff drafted the letter containing the settlement agreement.
At trial, there was no evidence introduced to contradict defendant’s assertion that there had been no film revenues at this time. For this reason, the exception of prematurity filed by La Fete should have been sustained, and More’s suit dismissed in accordance with La.Civ.Code art. 933.
Accordingly, the judgment overruling the exception of prematurity is reversed and set aside, the exception is sustained, and plaintiff’s suit is dismissed at plaintiff’s cost.
REVERSED AND RENDERED.