CHEHARDY, Chief Judge.
This application for supervisory writs arises in an action by First National Bank of Jefferson Parish (hereafter called FNJ) to enforce its rights under certain promissory notes, a mortgage, and a continuing guaranty against a real estate development corporation (Manor Heights Co., Inc.) and its president (Albert J. Ward, Jr.). At issue on the writ application is whether the trial court erred in denying the defendants’ exception of res judicata. We grant writs, finding that res judicata is applicable, and remand the matter with an order.
The exception was based on an exchange of letters between the parties in which the plaintiff proposed to settle the parties’ differences by certain reciprocal actions and the defendants accepted the proposal unconditionally. The defendants contend the letters, when read together, constitute a compromise agreement in writing as required by LSA-C.C. art. 3071 to perfect a settlement.
The trial court found the plaintiff’s letter contained “no offer in legal contemplation,” because it used “the conditional would instead of unconditional terms such as will or shall.” In addition, the court stated, the letter contemplated that additional documents would be required to con-fect any agreement of compromise, such as dations en paiement, releases, and dismissals. The court concluded that “the three letters represent stages of negotiation, steps on the way to confection of an agreement of compromise, but did not — could not without something more — establish such an agreement of compromise * *
The entire text of these letters is attached to this opinion as Appendices A, B and C.
FACTS
Manor Heights owns 100% of W.V., Inc., a corporation that owns Visko’s Restaurant in Gretna. FNJ holds notes from Manor Heights for financing of several real estate ventures, as well as notes from W.V. for financing of Visko’s, and continuing guaranties by Ward of portions of these debts. FNJ filed this suit on May 25, 1989, alleging that Manor Heights and Ward are liable to FNJ for $415,473.21, plus interest. Defendants reconvened on July 5, 1989, seeking to annul their obligations on the basis of misrepresentation, duress, breach of contract, breach of fiduciary duty, and unfair trade violations.
By letter dated August 25, 1989, FNJ Vice President Vincent Vastóla made an offer to compromise the pending litigation as well as the indebtedness of W.V. and Visko’s, proposing numerous specific terms and conditions to be undertaken on both sides. In a letter dated September 5, 1989, Ward unconditionally accepted FNJ’s proposal, individually and in his capacity as president of Manor Heights and W.V. Ward’s letter was hand-delivered to Vastó-la, who acknowledged receipt of the letter by signature on September 5, 1989.
The next day Vastóla placed a telephone call to Ward at Manor Heights’ corporate offices. Because Ward was unavailable, a Manor Heights employee named Gary Becker took the call. Vastóla informed Becker that Ward had failed to indicate in his acceptance letter which of two alternatives regarding the W.V. loan he wished to select.
On September 6, 1989, Ward sent another letter to FNJ, indicating which of the alternatives he and the corporations desired to select. This letter was also hand-delivered to Vastóla and was signed as received by him on September 7, 1989.
*63 On September 12, 1989, Vastóla telephoned Ward to inform him he did not realize when he made the proposal that there was a second mortgage on one of the properties to be transferred to FNJ by dation under the settlement. Vastóla stated he was rescinding FNJ’s offer and followed this with a letter advising there were open items to be discussed regarding a settlement. Ward refused to accede to the rescission and scheduled a settlement closing for September 29, 1989. No FNJ representative appeared at the closing.
On December 1, 1989, Ward and Manor Heights filed an exception of res judicata, combined with a motion to enforce compromise, seeking to have further prosecution of this lawsuit barred on the basis that the three letters together constituted a valid and enforceable compromise agreement. FNJ responded with an exception of unauthorized use of a summary proceeding and also filed a petition for a declaratory judgment regarding the effect of the three letters. The declaratory judgment action was consolidated with the case at bar.
In addition, FNJ filed a petition for exec-utory process against W.V., Inc., seeking to foreclose upon the Visko’s complex. W.V. filed a petition for injunction to bar any foreclosure not conducted in conformity with the terms of the letter agreement. Although that action has not been consolidated with the matter at bar, the parties have stipulated they will be bound by the ruling in this case.
The exceptions were argued in the district court on April 9, 1990. At the hearing, the defendants offered the testimony of A.C. Hindelang, Jr., Senior Vice President of FNJ, who testified he learned in 1988 of the existence of the second mortgages through correspondence from Ward’s loan officer at the other bank and from Manor Heights’ attorney, which was in FNJ’s file.
In addition, defendant Ward testified that he had discussed the existence of the secondary encumbrances with both Hinde-lang and Vastóla, as well as with FNJ’s president, Elton Arceneaux, prior to August 25, 1989.
Vastóla, on the other hand, stated he was not aware of the junior encumbrances when he wrote the August 25, 1989, letter. He also said he did not intend his letter to be a final offer, but rather he, wished to explore settlement possibilities.
The court rendered judgment on December 3, 1990, overruling both exceptions and denying the motion to enforce the compromise. From that judgment the defendants have filed this application for writs.
The relators contend the trial court erred, first, in concluding that the Bank’s letter of August 25 did not amount to a legal offer which, coupled with defendants’ written acceptance, makes a valid settlement agreement enforceable through a plea of res judicata; secondly, in failing to consider pertinent language contained in the Bank’s August 25-letter which makes it clear that the letter is firm settlement pro- . posal.
In opposition FNJ claims its letter was not an offer capable of acceptance, but rather was a mere invitation to negotiate because its language was conditional, it presented alternatives, and it contemplated the execution of additional documents, which was never done. Alternatively, FNJ contends that Ward’s selection of one option was a “counteroffer” that was never accepted by FNJ.
LAW
LSA-C.C. art. 3071 provides:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
“This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance although its sub *64 stance may thereafter be written in a more convenient form.”
“Transactions have, between the interested parties, a force equal to the authority of things adjudged” and they cannot be attacked for error in law or for lesion. LSA-C.C. art. 3078. However, a transaction may be rescinded “whenever there exists an error in the person or on the matter in dispute” or “where there exists fraud or violence.” LSA-C.C. art. 3079.
The elements of a compromise are (1) mutual intention of putting an end to the litigation and (2) reciprocal concessions of the parties in adjustment of their differences. Rivett v. State Farm Fire and Cas. Co., 508 So.2d 1356 (La.1987).
Where two instruments, when read together, outline obligations each party has to the other and evidence each party’s acquiescence in the agreement, a “written compromise agreement,” as contemplated by statute, has been perfected. Felder v. Georgia Pac. Corp., 405 So.2d 521 (La.1981).
The key language in FNJ’s August 25th letter is contained in two paragraphs:
“As I mentioned to you in our telephone conversation of August 23, 1989, First National Bank of Jefferson Parish (“FNJ”) would like to explore with you the possibility of settling the matters raised by the outstanding loans by FNJ to Manor Heights Co., Inc (“Manor Heights”), Joseph Vuskovich (“Vusko-vich”) and W.V., Inc. (“W.V.”).
[The letter then sets forth specific actions to be taken by each party regarding each loan, stating FNJ “would” perform certain actions and in exchange each debtor “would” perform other actions, including execution of dations en paiement, releases and dismissals of the litigation. The letter concludes:]
“We believe that the foregoing is a reasonable proposal that is advantageous to all parties and is certainly preferable to the alternative of continuing, expensive and contentious litigation over these loan transactions. We would appreciate your thoughtful consideration of the foregoing settlement proposal and await your response thereto.”
We find the language used in the letter entitled the defendants to rely on the terms offered. Although the first paragraph states the bank wished to “explore ... the possibility” of settlement, the specificity of the terms listed and the paragraph at the end indicate that the letter was an offer the bank hoped the defendants would accept. The letter is precise and carefully framed; no reasonable recipient would think the writer would propose terms he did not intend the recipient to accept.
We conclude the letter and Ward’s responses together convey both the mutual intention to compromise the litigation and the reciprocal concessions listed by Rivett, supra, as the elements of a compromise. At the time the letter was written, FNJ— through its agent, Vastóla—intended the terms therein to be an offer of settlement. Although FNJ, through Vastóla, overlooked or omitted information that may adversely affect FNJ’s benefits from the compromise, FNJ’s negligence cannot be held against Ward and his co-obligors. Ward knew the information regarding the second mortgages had been given to FNJ; thus, he was justified in relying on the offer made in the letter. By the time FNJ changed its intention, the offer had been accepted. See Clover Contractors v. James H. Jones—1980, 453 So.2d 983 (La.App. 4th Cir.1984), writ denied, 459 So.2d 540; Carlton v. Great American Insurance Company, 273 So.2d 655 (La.App. 4th Cir.1972), writ denied, 277 So.2d 442.
“In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. * * * ” LSA-C.C. art. 2056; Kathryn More & Asso. v. La Fete de La Nouvelle, 464 So.2d 984 (La.App. 4th Cir.1985). “[I]f the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.” LSA-C.C. art. 2057.
*65 LSA-C.C. art. 1947 states, “When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form.” Under the terms of FNJ’s letter, various other documents were required to transfer ownership of the mortgaged properties and otherwise conclude the litigation. FNJ contends the compromise could not be perfected until the other documents were completed.
We find this argument without merit. The execution of other documents represented fulfillment of the parties’ obligations under the compromise, but the compromise itself was completed and enforceable after the agreement reached by the letters exchanged between the parties. See Wood v. Kohnke, 428 So.2d 848 (La. App. 5th Cir.1983), writ denied, 435 So.2d 440; Villanueva v. CNA Ins. Companies, 868 F.2d 684 (5th Cir.1989).
Nor do we find merit to FNJ’s argument that Ward’s choice of one of two alternatives offered by FNJ regarding the W.V. loan was a counteroffer that FNJ never accepted. LSA-C.C. art. 1943 provides, “An acceptance not in accordance with the terms of the offer is deemed to be a counteroffer.” Ward’s acceptance, however, was in accordance with the terms of the offer, which presented a choice of two alternatives.
DECREE
For the foregoing reasons, we grant a writ of review and reverse the judgment of the district court. Judgment is hereby rendered in favor of the defendants, Manor Heights Co., Inc., and A.J. Ward, Jr., and against the plaintiff, First National Bank of Jefferson Parish, granting the exception of res judicata. The matter is remanded to the district court for further proceedings in accordance with this decision. Costs are assessed against the plaintiff-appellee.
WRIT GRANTED; JUDGMENT REVERSED AND RENDERED.
*66 APPENDIX A
[[Image here]]
*67 [[Image here]]
*68 [[Image here]]
*69 [[Image here]]
*70 APPENDIX C
[[Image here]]
*71 [[Image here]]